## EDWARDS HOUSE CO. *et al. v.* CITY OF JACKSON.

(In Banc, May 7, 1923.)

[96 South. 170. No. 23135.]

MUNICIPAL CORPORATIONS. *Contract to pay annual sum equal to entire tax on designated property without petition of majority of qualified voters void.*

The Laws of 1920, chapter 326, section 1, amending chapter 209, Laws 1918, section 3, provides: "That no warrant shall be issued or indebtedness incurred by any . . . municipality unless there is sufficient money in the particular fund from which the allowance is or must be made to pay such warrant or indebtedness. Provided, however, that such indebtedness may be incurred upon petition of a majority of the qualified electors," etc. A city cannot without such petition purchase property on a credit basis extending over a number of years, and a contract by the city to pay annually a sum equal to the entire tax on designated property for each year is *ultra vires* and void.

APPEAL from chancery court of Hinds county.

HON. V. J. STRICKER, Chancellor.

Suit by the Edwards House Company and others against the City of Jackson. From a decree for defendant, plaintiffs appeal. Affirmed.

*Green & Green,* for appellant.

No exemption is granted under the contract there being but an appropriation of taxes to purchase a property desired by the city. This contract does not in any way impair the taxing power by abridgment, surrender or otherwise. As the facts now appear, the total consideration to be received by appellant is this appropriation of taxes, and in this case, therefore, we are not called upon to deal with what the future may hold in store, with what may be done, with what may not be done. The duty of the judiciary is complete when it decides the issues made,

and is not concerned with what may not come to pass.  24 Ency. Law (2 Ed.), 775; *Hart* v. *Picard,* 75 Miss. 654; *Memphis, etc. Railroad Co.* v. *Neighbors,* 51 Miss. 412; *Phelps* v. *Harris,* Id. 788; *Wofford* v. *Bailey,* 57 Miss. 239. Further, where a judgment is had without a pleading upon which to base it, it is void.  The judicial power extends merely to the settlement of actual controversies.  It cannot render declaratory judgments, but must confine its exercise to adjudication where one party affirms and another party denies and the right with reference to the property depends upon such determination.  *McLeod* v. *Womack,* 50 So. 66; Cent. Dig. Title Judgments, 437, Dec. Dig., Id. 251; *Porterfield* v. *Butler,* 47 Miss. 170; *Steele* v. *Palmer,* 41 Miss. 88; *Black* v. *Mosely,* 24 Miss. 170; *Armstrong* v. *Barton,* 42 Miss. 506; *Schuber* v. *Murphy,* 91 Miss. 526, 44 So. 810; *Lee* v. *Dozier,* 40 Miss. 482: *Hale* v. *Lancaster,* 44 Miss. 418; *Hayes* v. *Estelle,* 25 Miss. 242; 23 Cyc. 1235.

Power of Municipality to Purchase Land for Streets.  This municipality was vested with such power under section 3314 of the Code, 1906.  By section 3337 they have the power of eminent domain in laying out streets.  Therefore under the statutes of the state of Mississippi, as to streets, the municipality has full jurisdiction.  In short, the same jurisdiction as is possessed by the boards of supervisors over roads, ferries and bridges, so that integrated into the definition of the power of the city is the power of the board of supervisors as defined in *Board* v. *Arrighi,* 54 Miss. 668; *Paxton* v. *Baum,* 59 Miss. 531; *Bank* v. *Duncan,* 52 Miss. 743.  Full value will be paid to the city under the terms of the deed when this property was acquired.  The city is the judge and in the absence of fraud its judgment is not open to review. *Dantzler* v. *State,* 97 Miss. 355, 53 So. 4; *Phillips* v. *City of Portsmouth,* 78 S. E. 654; *Grant* v. *City of Davenport,* 36 Iowa, 396; *Monroe Water Works* v. *City of Monroe,* 110 Wis. 11, 85 N. W. 685; *Ludlington Water-Supply Co.* v. *City of*

*Ludlington,* 119 Mich. 488, 78 N. W. 561; *Los Angeles* v. *The Los Angeles City Water Works Company,* 49 Cal. 638; *Illinois Trust and Savings Bank* v. *City of Arkansas City,* 78 Fed. 282. See also *Monroe Water Works* v. *City of Monroe,* 110 Wis. 11, 85 N. E. 685; *Cartersville, etc.* v. *Cartersville,* 89 Ga. 683; *Grant* v. *City of Davenport,* 36 Iowa, 396; *Washburn* v. *Washburn Water Co.,* 120 Wis. 575; *Water Co.* v. *Waterville,* 93 Me. 595; *City of Partland* v. *Partland Water Co.,* 67 Maine, 135; Dillon Municipal Corporations (5 Ed.), section 1310; 28 Cyc. 1689.

The broad distinction must be observed between an exemption from taxation and a contract of purchase of property by an appropriation of taxes regularly levied and collected, which when levied and collected are applied in liquidation of a contract liability admeasured by their amount. This court has uniformly held that taxes may be voted and levied in aid of a public improvement. *Brown* v. *Beatty,* 5 George 240; *Hawkins* v. *Carrol County,* 50 Miss. 757; *Railroad Co.* v. *McDonald,* 53 Miss. 245. A leading case in the Federal court is *Bartholomew* v. *The City of Austin,* 52 U. S. App. 512. See also *Grant* v. *The City of Davenport,* 36 Iowa, 396, 406; *Bank* v. *Worrell,* 67 Miss. 58; *LeBlanc* v. *Railroad Co.,* 72 Miss. 669; Abbott on Municipal Corporations, 721; *Quitman County* v. *Stritze,* 70 Miss. 323.

II. No Right in Municipality to Refuse Payment When it Still Continues in the Enjoyment of the Property Received in Virtue of the Contract. The power to acquire has been hereinbefore set forth, and under *Lester* v. *Jackson,* 69 Miss. 887, express sanction for acquisition has been set forth. See also *Reid* v. *Trowbridge,* 78 Miss. 549; 28 Cyc. 604; *Louisville* v. *University,* 15 B. Munroe, 642; 28 Cyc. 620. Now passing for the moment this proposition, we direct attention of the court to the fact that the municipality is in actual possession of the property which it has obtained in virtue of this

contract, and being so in possession, it is using the same for lawful, corporate purposes of a street, and yet when sued for the purchase price of that whereof it is so in possession, seeks to defend on the ground that its right of acquisition is in excess of its charter powers.    Directly controlling is the strong case of *Watts* v. *Buchanan*, 92 Miss. 544.    This rule of law has become fundamentally integrated into our jurisprudence, and was re-affirmed in *Bank* v. *Bank*, 67 So. 961.    So far, therefore, as the Edwards House Company is concerned, this is an executed contract whereunder the appellant has parted with all of that whereunto the appellee assumed to plead *ultra vires*.    Executed contracts must be distinguished from unexecuted contracts.    *Camden & Atlantic R. R. Co.* v. *Mays Landing, etc., R. R. Co.*, 48 N. L. Law Rp. 561; *Telegraph Company* v. *Railroad Company*, 1 McCrary's Rep. 188, 201; *Bissell* v. *The Michigan Southern & Northern Indiana Railroad Companies*, 22 N. Y. Rep. 258; *Bond* v. *Terrell Manufacturing Company*, 82 Texas 311-314; *Prairie Lodge* v. *Smith*, 58 Miss. 308; *Grand Gulf Bank* v. *Archer*, 16 Sm. & M. 180, 181; *Williams* v. *Bank*, 71 Miss. 868; *Gillam* v. *Brown*, 43 Miss. 642, *Allen* v. *Edwards*, 93 Miss. 731.

III.    NO SURRENDER OF POLICE POWER.    The appellee draws in question the validity of section 7 of the contract, under which it was provided that "said city shall have no right at any time to have said parcel of land above described paved in any other manner than with a noiseless pavement, which shall exclude all forms of vitrified brick, concrete and other like pavements, but shall give the right to said city to have said plat paved with wood blocks, asphalt, bitulithic, and other substances of a similar character.    The right to pave is not denied the appellee, but a limitation is placed upon the rights of the appellee in the property co-equal with the protection necessary to the existing rights of the adjoining owner.    The owner of

property may, when disposing of it, so limit its use as not to thereby destroy valuable property of which he continues to be the owner. The right of property was defined in *Van* v. *Edwards,* 67 L. R. A. 464; *Wynehamer* v. *People,* 13 N. Y. 396; *Block* v. *Schartz,* 65 L. R. A. 311; *Allgeyer* v. *Louisiana,* 165 U. S. 578; *Truax* v. *Raich,* 239 U. S. 33; *Insurance Co.* v. *Dodge,* 246 U. S. 374; *United States* v. *Freight Association,* 166 U. S. 320; *Savings & Loan Ass'n* v. *Topeka,* 20 Wall. 662; *Cole* v. *La Grange,* 113 U. S. 1; *Madisonville Traction Co.* v. *St. Bernard,* 196 U. S. 252, 49 L. Ed. 462; *Green* v. *Frazier,* 253 U. S. 233. Until, unless, and except this government shall become a government of men and not of law, it will never be possible for the appellee, in virtue of its being a city, to take from the humblest of its citizens that property whereof he was lawfully seized. The right to pave this street with material which would damage the business of complainant was not given. It can be condemned, and when condemned and compensation therefor made, cheerful compliance with the laws of the land will be by appellant had, but until so condemned and compensation therefor made, it is not within the power of any government of America to take that which is this appellant's and appropriate it to the public use unless, until, and except first due compensation is therefor made.

*W. E. Morse,* for appellee.

While our courts have never been called upon to pass upon a contract similar to this one, yet they have stated how streets and highways could be established. *Stockstill* v. *Nicholson,* 1 Walker 75; *Craft* v. *DeSoto County,* 79 Miss. 618, 31 So. 204; *Rylee* v. *State,* 63 So. 342; *Illinois Central Railway Company* v. *State,* 48 So. 561. Counsel's answer to this contention is that the city had the right to purchase this street, that they were acting wihin their statutory rights, and within the statutory powers con-

ferred upon a municipaliy. Charter powers are to be construed most strongly against a right claimed by a municipality and not clearly given by statute, and in case of doubt it should be resolved against its charter powers. See *Crittenden* v. *Boonville,* 92 Miss. 277, 45 So. 273. Those dealing with a city must notice its charter and the powers of its officers. *Edwards Hotel and City St. Ry.* v. *Jackson,* 96 Miss. 547, 51 So. 802; *Hazlehurst* v. *Mayes,* 51 So. 890, 96 Miss. 656; Section 3337, Code of 1906 or 5834, Hemingway's Code, is the only statute providing how streets may be acquired and established and we think that the Hazlehurst case is conclusive on this. The case of *Board* v. *Arrighi,* 54 Miss. 688 and *Baxton* v. *Bann,* 59 Miss. 531, simply hold that the full jurisdiction "means only such jurisdiction as was given by the statutes and no other." We simply say that the city did not have the legal right to enter into the contract for the purchase of a street. That the proper proceedings would have been an eminent domain proceedings. We do not say that a city may not make a contract, but we do say that the municipal officers cannot exceed their authority, and go beyond the powers delegated to them and bind the whole city by an *ultra vires* contract.

II. THE CONTRACT IS VOID. 'The city notified the company that unless they paid their taxes, a ten per cent (10%) penalty would accrue and the company filed this suit to specifically enforce this contract. The city's action was not authorized by statute and is therefore an *ultra vires* act and void. We further claim this section to be void for the reason that it binds the succeeding administrations. *Edwards Hotel and City Ry. Co.* v. *Jackson,* 51 So. 802.

III. THE CITY CANNOT CONTRACT AWAY ITS LEGISLATIVE AND POLICE POWERS. Section 840 of Elliot on

Roads and Streets; *City of Jackson* v. *Doxey,* 91 So. 348; *State* v. *Board of Park Commissioners,* 110 N. W. 1121. All cases cited by appellant deal with commercial corporations in which an *ultra vires* contract was made, all deal with executed contracts. Municipal corporations are different from ordinary corporations as we have already pointed out in the case of *Hazelhurst* v. *Mayes,* and *Edwards House Company* v. *Jackson.*

Conclusion. There are only three ways of establishing a street, (1) dedication, (2) prescription, (3) statutory proceedings, the only statutory proceedings being eminent domain. The contract is void, illegal, *ultra vires,* and not binding on the city, because it binds them to defend an illegal contract and binds them to pay attorneys fees and court cost for another. It binds the succeeding administrations; it is an exemption from taxation by an indirect method, it is a contravention of section 80 of the Constitution. The legislative and police powers are powers that were delegated to the municipality by the legislature; they are for the protection of the people, the municipal officers are mere trustees and not agents; they have no right to contract away these powers.

*Green & Green,* for appellant in answer to questions propounded.

The court asks: "If the city has power to purchase a right of way for a street, can it make a purchase otherwise than for cash." Our answer is, "The power to purchase exists."—Under section 5796, Hemingway's Code, the city might "contract and be contracted with." Under section 5811, Hemingway's Code, it might "purchase and hold real and personal property" and was further vested with the right to sell and convey and "make such order respecting the same as may be deemed conducive to the interest of the municipality." It further has power, "to make all contracts and to do all other acts in relation to the property and concerns of the municipality. There has then been conferred the right to purchase, and the

word "purchase" is defined in 32 Cyc, 1266, as "A verb, to buy, to obtain property by paying an equivalent in money; to obtain or secure as one's own by paying or promising to pay; compromise; to buy; to bargain for." There is no restriction that such purchase must be for cash. See *Love* v. *Holmes* 91 Miss. 535; *Light, Heat and Water Company* v. *Jackson,* 73 Miss. 644, 19 So. 771; *Reid* v. *Trowbridge,* 78 Miss. 549; *Mayes* v. *Hazlehurst,* 96 Miss. 656; *Strong* v. *Monroe County,* 78 Miss. 578; *Board of Supervisors* v. *Klien,* 51 Miss. 813; *Rotenberry* v. *Yalobusha Co.,* 67 Miss. 470, 7 So. 211.

*Question (2);* "If a city may purchase a right of way for streets, must it not agree· upon a fixed, definite and certin sum to be paid therefor, ascertainable as of the date of the contract?" Whereunto we answer: The amount to be paid hereunder becomes definitely fixed and certain and any law is certain which may be made certain. At a fixed time in each year, the amount thereunder to be paid is fixed definitely by a standard which is certain. In this case, the power of the municipality is to purchase—to make all contracts. Thus empowered, they may make that contract which best conserves the public interest and vouchsafes to the public that which they are required to exercise their best judgment to obtain. In so acting, this court does not sit, as above quoted in the Trowbridge case, as a member of the commission, and to strike down its contract must find a transgression of the law. For the reasons stated herein before, we, with deference, submit the right to contract as stated.

*Question (3);* "Has the city power to pledge its revenue derived from taxation for any longer period of time than the current year?" To which we make answer: (a), There is no· right upon the. part of the city in possession to assert a want of power to contract. (b). There is 'no pledge of any revenue by the contract in question. As pointed out in *Light, Heat and Water Company* v. *Jack-son, supra,* and *Reid* v. *Trowbridge, supra,* contracts ex-

tending beyond the current year are not uncommon in municipalities. Nearly all of the contracts for light, heat, water, sewerage and other public necessities extend over a period beyond the current year and therefore there is a binding obligation upon the city precisely as in this case there is such an obligation. Being bound, the city still receives that wherefor it contracted, and receiving must therefor pay.

*Question (4);* "Can a city enter into a contract by which it can relieve a property owner from paying the costs or the property owner's proportion of the cost of a public improvement to be made in the future? And can it agree in advance of the time when such improvement may become necessary upon the kind of material to be used, or exclude classes of material that cannot be material or beneficial as of the date when the improvement is to be made under conditions and circumstances which shall exist at such time?" To which we answer: No such contract as is assumed by this question is here sought to be made. The city can at any time it sees fit assess in accordance with law. The Edwards House Company was the absolute owner of this property; therefore it could create such estates as it saw fit, and dispose of either an estate in fee simple or an estate at will, or any estate varying between the two. In order to protect its property in its hotel, it saw fit to deal with this situation and coordinate the price asked with the estate conveyed to the city, for had it parted absolutely with title, it would have exacted a greater compensation than has been exacted because it would, by such transaction, have conferred upon the city the right to impair and imperil its business without at the same time advantaging the city in any way or to any extent. If the city wants the right to pave this street with any of those materials which are prescribed, it can forthwith condemn by eminent domain the rights of the appellant remaining in the street.

*Question (5);* "Where the city has levied taxes for

various purposes named in the statute for any year, can the city contract to pay or issue voucher which must be accepted in payment of all these taxes drawn on the general fund? In other words, can the funds of the city collected for one purpose be used for any purpose other than that for which it was collected?" With utmost deference, this question was not raised by the pleadings, nor by the contract. A perusal thereof, with deference, will demonstrate this proposition.

*Question (6);* "Can a city contract to issue a voucher in the future when it is not understood there will be funds in the treasury to pay such voucher, and make the validity of the contract depend upon the carrying out of all of the provisions and forfeitable if any of the provisions are not performed?" To this question, we answer that the issuance of the voucher discharged the obligation of the city in the premises. There has been a time when vouchers were not convertible into cash save in the fall, and threfore when the city has done that which it contracted to do, the party of the other part having received the admeasurement of his contract is not in a position to complain.

*W. E. Morse,* for appellee.

On the threshold of the case we are presented with the limitations of the municipal authority. They cannot make a contract that is not expressly authorized by the statutes (See *Crittenden* v. *Booneville,* 92 Miss. 277, 45 So. 723; *Hazlehurst* v. *Mayes,* 96 Miss. —, 51 So. 890.) It is encumbent on the Edwards House Company to show that the city has the expressed statutory authority to make the contract in question. In answer to question No. 6, appellants beg the question. This is simply another way of asking a question presented by Judge ANDERSON, that is whether or not chapter 326 of Laws of 1920, would have any effect on this contract. We say

that under this law which was passed April 3d, and the contract.was made April 7, that the city would be without authority to contract, to issue warrants in the future for payments that were to be made in the future.

Argued orally by *Garner W. Green* and *Marcellus Green* for appellants and *W. E. Morse* for appellee.

ETHRIDGE, J., delivered the opinion of the court.

The appellants filed a bill for specific performance of a contract with the city of Jackson for the purchase of a strip of ground lying between the Illinois Central Railroad Company's right of way and the Edwards House as it stood in 1920, and lying between Capitol street on the north and Pearl street on the south. The bill alleged that on April 7, 1920, complainants made and entered into a certain contract with the city of Jackson whereunder and whereby it was recited that complainants, therein called the seller, owned a certain tract of land, described lying as above stated, and now known as Esau street. That the city of Jackson was desirous of acquiring the same for public purposes and could only do so by the prompt, full, and complete performance of the terms and conditions contained in said contract, and the full retention therefor by complainants of all benefits, rights, and things thereuder by the said seller received, and that it was expressly provided that the full performance of each of the terms thereof was a condition precedent to the accrual to the city of Jackson to have it delivered that certain deed which was that day duly executed by the complainants to the city for the aforesaid tract or parcel of land, and which was deposited in escrow with the Merchants' Bank & Trust Company, of Jackson, Miss., there to remain until the fulfillment of the conditions in said contract set out.

The contract in full reads as follows:

"This indenture executed as of February 18th, 1920, by and between Edwards House Company, a corporation

duly chartered, organized, and existing under and by virtue of the laws of the state of Mississippi; Enochs & Flowers, Ltd., an association, being the owners of all of the capital stock of said Edwards House Company, their successors and assigns, all hereinafter called the 'seller,' and the city of Jackson, a municipal corporation duly chartered, organized and existing under the laws of the state of Mississippi with its domicile in Hinds county, hereinafter called the 'city,' witnesseth:

"(1) Seller owns that certain parcel of land located in the city of Jackson, county of Hinds, state of Mississippi, described as: A strip or plot of ground between Capitol street on the north, Pearl street on the south, the now existing Edwards Hotel on the east, and the right of way of the Illinois Central Railroad Company on the west, and more minutely described as follows: Beginning at a point on the south side of Capitol street where the same is intersected by the east right of way line of the Illinois Central Railroad, as the same is determined by the right of way fence; thence east along said south side of said Capitol street fifty (50) feet to an iron stake; thence southward at an angle from Capitol street (measured from west to south) of eighty-seven and one-half degrees and along a line which is fifty (50) feet east of and parallel to the east right of way line of the Illinois Central Railroad Company, three hundred twenty and five-tenths (320.5) feet to an iron stake on the north line of Pearl street; thence northwestward at an angle from the foregoing line seventy-four degrees (measured from north to west) along said north line of Pearl street, approximately fifty-one (51) feet to the east right of way of the Illinois Central Railroad Company; thence northward along said right of way line three hundred eight and one-tenth (308.1) feet to the point of beginning. The east line of the property herein conveyed being further marked near its center by two iron stakes, one immediately north of and one immediately south of that projection of the existing hotel

building, which now protrudes into the property here conveyed (which is to be moved under the conditions herein given).

"The property here conveyed being a strip fifty (50) feet in width east and west and extending from Capitol street to Pearl street, and being located in the city of Jackson, Mississippi, in two and 95/100 (2.95) acres, lot fifteen (15), and in the southwest quarter (S. W. $\frac{1}{4}$) of southwest quarter (S. W. $\frac{1}{4}$) of section three (3), township five (5), range one (1) east, which the city is desirous of acquiring for public purposes and can only do so by the prompt, full, and complete performance of the terms and conditions herein contained and the full retention thereafter by the seller of all benefits, rights, and things hereunder by said seller received. The full performance of each of the terms hereof being a condition precedent to the accrual to the city of the right to have delivered to it that certain deed which has been this day executed by the seller to the city for the aforesaid parcel of land hereunder deposited in escrow with the Merchants' Bank & Trust Company, of Jackson, Mississippi, there to remain until the fulfillment of the conditions herein at length set out.

"(2) Should the legality of any provision herein or of any part of any provisions herein, be assailed, or in any wise questioned, the city will endeavor to maintain the validity thereof, and of every part thereof, at its own cost and expense; but the seller may co-operate in such proceeding if he so desires.

"Should any provision herein, or any portion of any provision herein, be adjudged inoperative for any reason, so that the seller would not receive all of the considerations and rights herein by it contracted for, in the manner and form, and at the time herein set out, or if after receiving the same and having said deed delivered, it should be adjudged that any provision hereof, or any part of any provision hereof, were inoperative in manner and form as

herein set out, so that the seller were forced to return or surrender any right hereunder given, or any consideration hereunder received, then, if undelivered, said deed shall be returned, and if delivered, shall forthwith become void (and such stipulation shall be written into its face and control its operation, irrespective of delivery).

"(3) Should said deed be returned hereunder before delivery, or become void after delivery, then the city shall have the right to use and occupy said parcel of land as a street, and shall, for the use and occupation of said parcel of land, pay unto the seller the sum of three thousand dollars ($3,000) per annum, for the collection whereof as rent the seller shall have all the remedies vouchsafed by law, and the possession of and title to said property shall reinvest in the seller as of the date of the execution of these presents, and there remain as of said date, as fully and completely as though these presents had never been executed.

"(4) Said seller shall have the right forthwith to cause to be removed therefrom all property of every kind and character thereon placed by the city.

"(5) Said city, to become entitled to the delivery of said deed, and to the rights hereunder granted after the delivery, agrees that said city will pay to the seller, and the seller shall receive and retain, without let or hindrance, in accordance with the terms hereof, the following amounts at the following times:

"(a) Upon the 15th day of December, 1920, and annually thereafter on the 15th day of December, up to and including December 15, 1939, unless otherwise herein provided, said city will pay to the seller in cash an amount equal to all municipal *ad valorem* taxes assessed upon that certain lot in the city of Jackson, described as follows:

"All of two and 95/100 (2.95) acre lot fifteen (15) and lot sixteen (16) one acre lot, except Gaddis-McClelland Bank and Seutter Building, and being all the property in that block owned by the Edwards House Company, all

in said city of Jackson, state of Mississippi, wherein the Edwards House is now. This amount to be assessed upon the land alone, irrepective of. all improvements thereon and personal property to be contained therein. Said payments to be made in the form of a voucher upon the treasury of said city and to be receivable for municipal taxes at par. Said sum would now be calculated upon a basis of fifty-two thousand dollars ($52,000) which with the assessment of the other property would aggregate one hundred seventy-seven thousand dollars ($177,000), the difference now being one hundred twenty-five thousand dollars ($125,000).

"(b)   At the same time during the same period, unless said period be reduced in accordance herewith, but, nevertheless, in addition to the amount specified in section (a) hereof, there shall likewise be paid and delivered in a similar voucher to the seller, by said city, an amount equal to the taxes lawfully assessed in, to, and against (1) all personal property contained in said Edwards House, such as furniture, fixtures, hotel appliances, supplies, accounts, and bills receivable, cash on hand, including its franchise and good will, and all other values embraced in or covered by its capital stock and surplus, or otherwise; and (2) in, to, and against all improvements of every kind and character located upon the above described parcel of land, and the fact that said improvement may be destroyed by fire, or otherwise, shall not confer the right upon a seller to demand additional compensation, or for a longer period of time.

"However, should there be any improvement, or improvements, placed upon said lot in an amount equal to or exceeding in cost twenty-five thousand dollars ($25,-000), then the number of payments to be made under this clause (b) shall be reduced in this manner; that is to say, a limit of two million five hundred thousand dollars ($2,500,000) is hereby fixed, which would be equalled if the amount of one hundred twenty-five thousand dollars

($125,000), which is the portion of the assessment properly to be made under clause (b), were charged against said two million five hundred thousand dollars ($2,500,-000) from and after this date, for the full period of twenty years during each and every of said years, in the manner provided for in clause (a) hereof.

"There shall be each year, beginning with 1920, an amount taken as an addends equal to one hundred twenty-five thousand dollars ($125,000) and an equal addends of one hundred twenty-five thousand dollars ($125,000) shall be used during each year until after the completion of any such improvements; then after the completion of any such improvement, or improvements, and so long as each shall remain thereon as an additional addends, there shall be taken two-thirds of the actual cost of each such improvement so then thereon, diminished by two-thirds of the actual value of any improvement now thereon, which may not then be there.

"As stated, this addition shall be begun in the year 1920, and shall be continued annually by adding the amount hereinbefore provided for to the sum for the next preceding year, and when the sum thereof equals or exceeds two million five hundred thousand dollars ($2,500,000) then in the next year after such sum equals or exceeds said two million five hundred thousand dollars ($2,500,-000) no payment shall be made. But it is expressly agreed, however, that if during the continuance of the time that these payments are required to be made, an exemption from *ad valorem* municipal taxation is granted, then, as to such improvement, or improvements, so exempt, no additional amount by reason thereof shall be added during any one year when said improvement, or improvements, is exempt; but such exemption of said improvement, or improvements, shall not prevent there being annually added, in order to determine when the payment shall cease, said sum of one hundred twenty-five thousand dollars ($125,000), which must be added each year until said

payment ceases, whether there is an exemption or not. Under no circumstances shall the payments to be made to the seller continue longer than to and including December 15, 1939.

"(c)    Should any municipal *ad valorem* tax be levied upon the capital stock of said corporation, its good will, its surplus, or any other form of tangible or intangible property which is, or is intended to be, described under sections (a) and (b) hereof, wherefore said city is under obligation to make payment in accordance with said sections (a) and (b) hereof, then said city will pay the seller, in addition to the amount provided for under said (a) and (b) for the said several years when said payment should have been made, any amount that may have been assessed for said years in the same manner and to the same extent, and as of the same time as though said property had been assessed under sections (a) and (b) hereof, and payment been made thereunder therefor.

"(d)    Should there be any back assessments of any kind or character made against any of the properties described in sections (a), (b), and (c) hereof during any of the years when the city was under obligation to make payment of such amount, or amounts, to the seller, then for all such amount, or amounts, of taxes as may be thereon due, the city binds itself, in addition to the amounts to be paid under sections (a), (b), and (c) hereof, to make such additional payments, it being the intention of this agreement, under said sections (a), (b), and (c), to cause payment to be made of all amounts lawfully assessible and collectible for *ad valorem* municipal taxation on all the property above described as real estate, and all the property of every kind and character belonging to or pertaining to said Edwards House Company, a corporation; and if, for any reason, in any year said payment shall not be made, due to a failure to assess, then such failure to so assess in such year shall not discharge the city from the obligation to make payment for the full

amount hereunder assumed, when said assessment is properly made, irrespective of the fact that it may not have been assessed at the time or place originally required by law.

"(e)   It is expressly agreed that the seller shall be entitled to be paid and to receive and retain as its own, at the times herein agreed to, an amount equal to the full amount of taxes hereinbefore set forth, and that the time of payment is made of the essence of the contract.

"(6)   It is expressly agreed that the seller will submit to the city of Jackson, upon the completion of any improvement, full cost thereof, and that the city shall have access to all sources of original information in the possession of the seller whereunder to audit and determine the correct amount of all such improvements as may be made, which shall affect the time during which payment shall be hereunder made.

"(7)   Said city shall have no right at any time to have said parcel of land above described paved in any other manner than with a noiseless pavement, which shall exclude all forms of vitrified brick, concrete, and other like pavements, but shall give the right to said city to have said plat paved with wood block, asphalt, bitulithic, and other substance of similar character.

"(8)   It is expressly agreed that all improvements, placed thereon until the delivery of the deed hereunder, shall be construed, maintained, and kept in repair at the sole expense of the city, which shall include both sidewalks, street pavements, sewers, water pipes, and all other municipal appliances that may be thereon.

"(9)   Said city covenants that it will cause to be strictly enforced all of its ordinances as to jitneys, automobiles, and all other matters between the hours of nine o'clock p. m. and seven o'clock a. m., and that by such enforcement it will respect the use and occupation of said property as a hotel so long as it shall be so used.

"(10)   Should there be a violation upon the part of

the seller in the due performance of any of the obligations hereunder assumed, the city shall be entitled to take immediate possession of said property, subject, nevertheless, to the obligations to pay therefor in the manner and form hereinbefore set forth.

"(11)    Should said city violate any of the provisions herein set forth in reference to said property, then the said seller may have said deed discharged of the condition and delivered to it under the terms and conditions herein set forth.

"(12)    Said deed delivered to the Merchants' Bank & Trust Company and the property hereinbefore described cuts off, as shown upon the blue print annexed hereto and marked Exhibit 'A,' a certain portion of the building belonging to the Edwards House Company. Said Edwards House Company shall have the right to allow said building to remain as now constructed, just as though these presents had never been executed, for a period of not to exceed twenty years. Should, however, said building be taken down by said Edwards House Company, or said twenty years expire, then the rights of said city shall attach just as though this provision had not been inserted with reference to said improvements so in said street as of the date of the expiration hereunder.

"(13)    There is now located at the Capitol street end of said parcel of ground a certain shed, the posts of which shall be so removed as not to interfere with said street; but the seller shall have the right to allow said shed to remain as now constructed for a period of not to exceed five years, just as though these presents had been unexecuted; but at the end of said period, or when removed, it shall be just as though this exception had not been made."

After the signing of the said contract, the bill alleges that the city failed and refused to issue the voucher therefor; and the bill was filed to compel the city to specifically perform said contract, and that an injunction mandatory and prohibitory be issued to compel the city at all times

to observe the terms and conditions in the said contract contained, and prayed for general relief.

The answer admitted the signing of the contract, and that said street was opened under the contract; but set up that such contract was *ultra vires* and beyond the power of the city to execute, setting forth specifically many objections to the legality and validity of said contract.

An agreed statement of facts was filed in the case, in which it is stipulated that a single question of law for decision is the validity of the contract above set out under the charter of the city, and that, if this agreement of facts is not full enough to present this question for decision, supplemental facts would be supplied, it being agreed that there are no facts in dispute, but agreed that the complainants were the owners of the property described in the contract, and that complainants operate a large hotel building adjoining said tract or parcel of land; that the city of Jackson is a municipal corporation operating under a commission form of government, having approximately thirty thousand population; that West Capitol street beginning at West street and ending at Gallatin street is the principal business district in the city, and probably the highest priced property is located diagonally across the street at the corner of Capitol street and Mill street; that the property in question fronts on both Capitol street and Pearl street, approximately fifty feet on each, and extending between substantially parallel lines between said streets one hundred sixty feet; that the right of way of the Illinois Central Railroad Company extends along the entire western edge of said tract or parcel of land; that Capitol street is paved throughout its entire length; that Farish street is paved both north and south of Capitol street; that no street lies east of Farish street until West street is reached, a distance of approximaely thirteen hundred and twenty-five feet. It was further agreed that Capitol street is badly congested with travel, and that it is desirable to have streets connecting Capitol

street with Pearl street to relieve the congested traffic, and provide parking space for automobiles, etc. It is further agreed that complainants did not desire to part with the property in question, and that the city had been endeavoring for fifteen years last past to have this street opened up to relieve the congestion and to have connection between Capitol street and Pearl street contiguous to the Union Depot. It is further agreed that the city at the time of the making of said contract had issued and outstanding twenty-three thousand, five hundred dollar bonds, carrying an interest charge of one hundred and ten thousand, and that the assessed valuation shown by the assessment rolls was twenty million, one hundred and thirty-two thousand and forty-one dollars and ninety-six cents; that the seller was not willing to sell the property on any other terms than those contained in the contract; that the said Edwards House Company prescribed the terms in the contract with reference to the pavement to be laid thereon, and the conduct of the jitney drivers in view of its hotel business; but for the integration of these prohibitions in the contract the Edwards House Company would have exacted, or endeavored so to do, an additional price; that the question for consideration is the legality of said contract and the deed made in pursuance thereof, and that the city upon this hearing is at liberty to raise any question of any character whatsoever with reference thereto under the pleadings or under this agreed statement of facts; that the city at once took possession of the property by virtue of the contract, and is enjoying the use and possession thereof solely under the contract and has no right to remain thereon without due compliance with the terms of the contract; that the city has constructed a curb and gutter, laid gravel and otherwise constructed a street, expending thereon, and by such use rendered the same unsuitable for the complainants' use, and to so restore it would require considerable outlay.

The foregoing is a sufficient statement of the facts and

conditions existing to understand the questions for decision.

It will be observed from the statement that this contract was made on April 7, 1920. On April 3, 1920, the legislature by an act amended section 3, chapter 209, Laws of 1918, so as to make that section read as follows:

"That no warrant shall be issued or indebtedness incurred by any county or municipality unless there is sufficient money in the particular fund from which the allowance is or must be made to pay such warrant or indebtedness. Provided, however, that such indebtedness may be incurred upon petition of a majority of the qualified electors of the county or municipality. Any such petition shall clearly state the exact amount of the indebtedness sought to be incurred and the definite purpose for which the expenditure is to be made, and the original petition shall be entered, together with the names of the signers, upon the minutes of the board of supervisors or municipal council. When a county or municipal board has incurred such an indebtedness, it shall be the duty of said board to make a special levy upon the taxable property of said county or municipality for the retirement of said indebtedness, and said special levy shall be made at the time, next succeeding the expenditure, when other levies are fixed. But nothing in this act shall prevent a municipality or a county from borrowing money in anticipation of taxes as now provided by law." Chapter 326, Laws of 1920, section 1.

In our opinion this section renders the contract illegal and void, because no indebtedness can be incurred by any municipality when there are insufficient funds in the particular fund which must be drawn upon to pay the contract or indebtedness incurred; there being no pretension that there was a majority of the qualified electors of the municipality who had petitioned for this indebtedness to be incurred. It is quite likely that the parties to the contract knew nothing of the enactment of this statute at

the time of making the contract. Nevertheless the statute is as effective to render the contract illegal as if the parties had actual knowledge thereof. There are many difficult legal questions apart from the effect of this statute presented by the record, many of which will readily occur to the legal mind giving attentive consideration to the terms of the contract and to the various statutes governing municipalities in this state, but we are relieved from any consideration of any of these questions by the plain provisions of chapter 326, Laws of 1920, above quoted.

The Chancellor having held the contract illegal and void, the judgment will be affirmed.

*Affirmed.*