CITY OF GREENVILLE *v.* QUEEN CITY LUMBER CO.

No. 40039 April 23, 1956 86 So. 2d 860

*Wynn, Hafter, Lake & Tindall,* Greenville, for appellant.

752

*Kellner & Kellner,* Greenville, for appellee.

754

ARRINGTON, J.

The appellee, Queen City Lumber Company, a corporation, filed bill of complaint against the City of Greenville, appellant, in the Chancery Court of Washington County seeking to recover $3,849.80, with interest at six percent from January 3, 1952. From a decree for the appellee in the amount sued for, with six percent interest from August 10, 1954, the city appeals and the lumber company cross-appeals, contending that it was entitled to interest from January 3, 1952. Briefly, the facts, which are not in dispute, are as follows:

The appellee was the owner of McCorkle Subdivision located in the City of Greenville, and being without sewerage, was desirous of developing said subdivision. Through its president, J. L. McCorkle, it applied to the city council on March 20, 1951 for the installation of sewer mains in said subdivision. At that time, it was admitted that the city was without funds to pay the costs of the installation of the sewer mains, and McCorkle proposed and agreed with the city that if the city would install the sewer mains in said subdivision under the supervision of the city engineer and in accordance with specifications to be provided by him, the lumber company would pay the costs thereof, which costs the city would repay to the lumber company when the houses were constructed on the lots comprising said subdivision and assessed for taxes. The order was duly entered on the minutes of the city council on March 20, 1951. On April 3, the city's attorney advised the council that the proposed agreement with the lumber company was illegal; whereupon the city council authorized the mayor

to notify the lumber company that the city could not proceed under the proposed agreement. The notice was accordingly given, in writing, to the lumber company on April 5, 1951. Later, during July and August, the sewer mains were installed by the city engineer and the costs thereof paid by the lumber company. On November 6, 1951, the city council entered an order to refund the lumber company the amount spent on the sewer mains. On January 3, 1952, the city engineer reported to the city council that there was due and owing to the lumber company $3,849.80, the cost of installation of sewerage in McCorkle Subdivision. On August 3, 1954, the lumber company filed claim for the refund; the council denied the claim, which resulted in the filing of this suit.

The appellant contends, first, that the agreement of March 21, 1951 was illegal and void under the provisions of Section 57 of the charter of the City of Greenville (Acts of 1886, page 536), and, second, the agreement being illegal and void for the reason that it was beyond the city's power to execute and being especially prohibited by the charter provision could not be subsequently ratified.

Section 57 of the charter of the City of Greenville is as follows: "Sec. 57. Be it further enacted, That it shall be unlawful for said city council, the mayor, or the clerk thereof, to order to be issued or to issue any warrant or order on the city treasurer for the payment of money, or in any other manner to contract any debt or pecuniary liability, unless there is in the hands of the treasurer at said time, and that may be properly applied to the payment of said warrant, a sufficient amount of money to pay the same; and should any of the foregoing persons violate the provisions of this section, unless misinformed by the treasurer, he shall be deemed guilty of a felony, and shall be punished, on conviction thereof, by fine, . . . ."

This section of the charter was construed by the Court in the case of Greenville v. Laurent, et al, 75 Miss. 456, 23 So. 185. There the Court held that a contract for the purchase of lands by the City of Greenville was illegal and void under Section 57. The Court said: "It is declared unlawful for the council, or any of the officials, in any other manner, to contract any debt or pecuniary liability unless likewise there be in the treasurer's hands at the time, and that may properly be applied to its payment, a sufficient sum of money to pay the same."

▬▬ ▬ As to the purpose of the provision, the Court further said: "It seems clear to us that the purpose of this section was to put the municipality upon a cash basis, by forbidding warrants or orders for the payment of money to be issued, or debts and pecuniary liabilities to be contracted unless the money was, at the time the warrant or order was issued or the debt or liability was contracted, on hand with the treasurer in sufficient amount to then pay the warrant or order or satisfy the debt or pecuniary liability. . . . But if the municipality is not thus clearly forbidden to plunge the city into debt, and to us it seems that it is, it is nevertheless true that if there is doubt as to the legislative grant of power to contract debts, the doubt must be resolved against the exercise of the doubtful grant of power. The charters of municipal corporations, like those of other corporations, are not to receive a latitudinarian construction."

In the case of Edwards House Co. v. City of Jackson, 132 Miss. 710, 96 So. 170, in construing a similar provision of chapter 326, Laws of 1920, Section 4321 of the Code of 1942, the Court held that a contract between the Edwards House and the City of Jackson was illegal and void, "because no indebtedness can be incurred by any municipality when there are insufficient funds in the particular fund which must be drawn upon to pay the contract or indebtedness incurred."

■■ ■ The agreement being illegal and void, it was not susceptible of ratification. Paine v. Matthews, 213 Miss. 506, 57 So. 2d 148. Cf. Town of Magee v. Mallett, 178 Miss. 629, 174 So. 246. We are of the opinion that the contentions of the appellant are well taken and that the City of Greenville was without power to enter into said contract at a time when it was admitted that there were no funds in the treasury.

■■ ■ The appellee contends that Section 4321, supra, which provides that "no warrant shall be issued or indebtedness incurred by any city or municipality unless there is sufficient money in the particular fund from which the allowance is or must be made to pay such warrant or indebtedness," etc., was repealed by Chapter 241, Section 16, Laws of 1950, and that the repeal of this general statute was applicable to all municipalities and was a repeal of Section 57 of the charter of the City of Greenville. We do not agree. In the case of Mayor, et al v. Streckfus Steamers, 167 Miss. 856, 150 So. 215, the Court said: "General acts do not ordinarily repeal the provisions of charters granted municipal corporations, unless such repeal is in express language or by necessary implication. 1 McQuillin on Municipal Corporations (2d ed.), pp. 436-437."

■■ ■ The appellee next contends that even if the charter provision was not repealed, it has no application to the indebtedness involved in this case, citing Section 3374-129, Code of 1942, which gives the governing authorities of municipalities the power to exercise full jurisdiction in the matter of streets, sidewalks, sewers, etc. The appellee relies on the cases of Choctaw County v. Tennison, et al, 161 Miss. 66, 134 So. 900, and City of Louisville v. Chambers, 190 Miss. 833, 1 So. 2d 771. We are of the opinion that these cases are not applicable or controlling in the instant case for the reason that it was not mandatory upon the City of Greenville to install the sewerage system in McCorkle's subdivision.

"Mere statutory authority to construct sewers or drains does not impose any duty to exercise such authority; and, unless the duty is positively imposed by the state, the municipality has discretion to determine whether it will construct a system of drains or sewers, as well as discretion to determine the nature, extent, capacity, and cost of the system, the time and manner of its construction, the method of financing its construction and maintenance, and the length of the period for which a particular arrangement should be made for the disposal of sewage; and a city cannot be compelled to exercise its discretion regarding the construction or maintenance of a sewer system." 63 C.J.S., Municipal Corporations, Section 1049, page 657. Cf. City of Greenwood, et al v. Provine, 143 Miss. 42, 108 So. 284.

 Appellee further contends that under Section 3519-26 of the Code of 1942 the city was authorized to and did borrow from the lumber company the cost of installing sewer mains in McCorkle's subdivision; and that if Section 57 was not repealed and is applicable to the indebtedness involved, it would be in direct conflict and nullify this section, which reads as follows:

"Sec. 3519-26. Borrowing money for extension or repair of system.—Any municipality which owns or operates any system, as defined in this act, shall have the power and authority to borrow money and issue its negotiable notes or certificates of indebtedness therefor, in an amount not to exceed the sum of ten thousand dollars ($10,000.00) in any calendar year, for the purpose of improving, repairing or extending any such system, or systems, without the necessity of calling and holding an election upon such question or otherwise obtaining the consent of the qualified electors of the municipality, or giving any notice thereof. Provided, however, that in all cases where money is borrowed under the provisions of this section the same shall be repaid during the term of office of the governing authorities authorizing the incurring of the obligation."

There was no compliance with this section. The city did not borrow money and "issue its negotiable notes or certificates of indebtedness therefor," but agreed to reimburse lumber company for cost of sewer system. This was the assumption of a pecuniary liability and there being no funds in the treasury, was in direct contravention of Section 57 of the city's charter, which renders the agreement illegal and void. Section 57 of the charter, supra, does not conflict with Section 3519-26, supra, as this section authorizes the city to borrow the money and comply with the charter provision, but this the city did not do.

In view of what has been said above, we are of the opinion that the chancellor was in error in finding for the lumber company, and his decree is reversed and decree entered here for appellant.

Reversed and decree here for appellant.

*McGehee, C.J.,* and *Lee, Ethridge* and *Gillespie, JJ.,* concur.