McFall vs. Commonwealth.  ·

CASE 8—INDICTMENT—FEBRUARY 21.

# McFall vs. Commonwealth.

APPEAL FROM CAMPBELL CIRCUIT COURT.

1. That the boundary and jurisdiction of the State of Kentucky rightfully extend to low-water mark on the western or northwestern side of the river Ohio must now be considered as settled. (5 *Wheaton*, 375; 4 *J. J. Mar.*, 158; *Rev. Stat.*, *chap.* 8, *secs.* 1, 2, *and* 3, *page* 219.)

2. The jurisdiction of the county of Campbell extends to low-water mark on the Ohio side along the entire line of the front of said county on the Ohio river; and one who commits an offense against the laws of Kentucky on said river, within the jurisdiction of said county, may be indicted and convicted therein.

3. *Quære.* Under the 11th section of the enactment known as the compact with Virginia, has the State of Ohio *jurisdiction* concurrent with Kentucky over so much of the Ohio river as flows between them?

4. M. was indicted by the grand jury of Campbell county for the offense of unlawfully solemnizing a marriage. The defendant was a justice of the peace for Cincinnati township, county of Hamilton, State of Ohio. By the laws of Ohio, justices of the peace were authorized to solemnize marriages within the jurisdiction of that State, subject to its laws, which require a license to the parties marrying. The marriage was solemnized on the ferry-boat, midway on the Ohio river between Newport and Cincinnati. The defendant was not authorized by any county court of Kentucky to solemnize the marriage, nor had the parties obtained license. He claimed that by the laws of Ohio he was authorized to solemnize the marriage, and that under the 11th section of the compact with Virginia, Ohio has jurisdiction concurrent with Kentucky over the river. It did not appear that Ohio had ever, by its legislation, assumed, or claimed, or asserted jurisdiction, exclusive or concurrent, over the place where the marriage was solemnized. *Held*—That M. was guilty of an offense against the laws and within the jurisdiction of Kentucky, and that the circuit court of Campbell county properly indicted, tried, and convicted him.

A. J. James, Attorney General, for Commonwealth, cited *Rev. Stat.*, 386, *chap.* 47, *sec.* 14; 1 *Met.*, 368; 16 *B. Mon.*, 206.

James R. Hallam, for appellant, cited *Rev. Stat.*, 157; *Compact with Virginia, sec.* 11; 5 *Dana*, 22; *Story's Conflict of Laws*, 106.

JUDGE DUVALL DELIVERED THE OPINION OF THE COURT:

McFall was indicted by the grand jury of Campbell county for the offense of unlawfully solemnizing a marriage.

The charge, as set forth in the indictment, is, in substance, that the defendant did, in the county of Campbell, "without license, and without being authorized by a county court of this Commonwealth, unlawfully and willfully unite in marriage" James Kline and Minerva J. Starke, and did unlawfully and willfully solemnize the marriage of said parties.

The defendant was found guilty, and, in conformity with the verdict of the jury, was sentenced to confinement in the county jail for the period of one month, and to pay a fine of one hundred and fifty dollars.

The court having overruled his motion for a new trial, he has prosecuted this appeal.

It was admitted upon the trial "that the defendant, at the time of the alleged marriage, was a justice of the peace for Cincinnati township, county of Hamilton, and State of Ohio; and that, by the laws of Ohio, justices of the peace were authorized to solemnize marriages within the jurisdiction of that State, subject to the laws of that State, and that the law of Ohio requires a license to the parties marrying before they should be married." And it was proved that the appellant had, about the time stated in the indictment, solemnized several marriages on the ferry-boat, midway on the Ohio river, between Newport, in Kentucky, and Cincinnati, Ohio.

Upon this evidence the court below instructed the jury: First, that if the defendant solemnized the marriage within the county of Campbell, without having been authorized to do so by a county court of this Commonwealth, and without a license therefor, issued by the clerk of the Campbell county court, they must find him guilty; and second, that "the jurisdiction of the county of Campbell extends to low-water mark

on the Ohio side, along the entire line of the front of the county of Campbell on the Ohio river."

The propriety of the first of these instructions has not been seriously questioned in argument. It is in substantial conformity with the provisions of the Revised Statutes regulating the solemnization of marriages. (*Chap.* 47, *secs.* 9, 14.) It might be conceded that so much of the instruction as required that the persons married should have obtained a license from the clerk of the Campbell county court was abstractly erroneous; yet, as there was no pretence that those persons had obtained any license from the clerk of any county court, the case of the defendant cannot be supposed to have been at all prejudiced by such error.

The second instruction is also unobjectionable. That the boundary and jurisdiction of the State of Kentucky rightfully extend to low-water mark on the western or northwestern side of the river Ohio, must now be considered as settled. The supreme court of the United States, in the case of *Handly's lessee vs. Anthony*, (5 *Wheaton*, 375,) expressly decide this point. It is said in the opinion in that case that the State of Virginia, owning the territory on both sides of that river, ceded to the confederation all the territory which she owned on the north side of the river; and it never has been doubted that she retained her dominion over the river, and that the northwestern territory was bounded by low-water mark on the north bank. "When a river is the boundary between two states or nations, if the original property is in neither, and there be no convention respecting it, each holds to the middle of the stream. But when, as in this case, one State was the original proprietor, and grants the territory on one side only, it retains the river within its own domain, and the newly erected State extends to the river only, and the low-water mark is the boundary."

To the same effect is the case of *Fleming vs. Kenney*, (4 *J. J. Mar.*, 158.)

The claim of Kentucky to the boundary and jurisdiction in question has not only been thus recognized by the highest judicial authority, but it has also been asserted in unequivocal terms by our own legislature in the statutes which establish

and declare the "boundary, sovereignty, and jurisdiction of the State of Kentucky." (*Rev. Stat., chap.* 8, *sec.* 1, *p.* 219.)

The second section of this statute declares that "the sovereign power and jurisdiction of the Commonwealth of Kentucky extends to and over the entire soil and water within the limits described in the preceding section, except so far as she may have ceded jurisdiction to the United States for national purposes."

And by the third section it is provided that "each county in this Commonwealth, whose boundary is described in part by the Mississippi and Ohio rivers, shall be considered as bounded in that particular by the State line; and the islands thereof shall be within the respective counties holding the main land opposite thereto within this State; and the several counties and tribunals thereof shall hold and exercise jurisdiction accordingly."

The case, then, which this record presents, is that of a wanton and flagrant violation by the appellant of the penal statutes of this Commonwealth, committed upon her own soil, and within her acknowledged territorial limits.

We will not stop to argue the general proposition that the power to execute and enforce the laws in all places within the limits of the Commonwealth is necessarily incident to her sovereignty over every portion of her territory, and is also necessary to the protection of her own citizens, and their rights of person and of property. The maxims and doctrines upon which this right is founded are of universal application to every state and nation.

But it is contended on the part of the appellant that he was a justice of the peace of Cincinnati, Ohio, and had authority by the law of Ohio to solemnize marriages within the jurisdiction of that State; and that under the 11th section of the enactment known as the compact with Virginia, Ohio has *jurisdiction* concurrent with Kentucky over so much of the Ohio river as flows between them.

It is admitted that questions of some difficulty have arisen, and may hereafter arise, as to the construction and effect of this section of the compact, and it is a part of the legislative

history of the country that negotiations having in view the settlement of those questions, have been several times attempted. And it may not be out of place here to express the hope that the whole subject may be finally disposed of in such manner as to secure the concurrent rights of, and to preserve the amicable relations which should continue to subsist between, the several States interested in its adjustment.

These embarrassing questions, however, do not arise upon the present record. It does not appear, from the admissions or proofs before referred to, that the offense charged was committed within the jurisdiction of " Cincinnati township," or within the jurisdiction of the State of Ohio, for the record contains no statute or other valid evidence showing that the latter State has ever assumed, or claimed, or asserted jurisdiction, exclusive or concurrent, over the place where the offense is proved to have been committed. The appellant has claimed exemption from the penalties imposed by the laws of the Commonwealth within whose limits he violated those laws; and has invoked the protection which, he claims, is afforded by the laws of another State, but has failed to show that any such laws exist. The word *jurisdiction,* as applied to a State, and as used in the compact with Virginia, imports nothing more than the power to govern by legislation; and without legislative enactments to enforce and carry out the jurisdiction so conferred, it cnnnot, of itself, be regarded as operative, or effectual to protect the appellant, or to defeat the right of our own tribunals to enforce and execute our own penal and criminal statutes.

Judgment affirmed.