WILLIAM H. SMITH *v.* CITY OF VICKSBURG.

1. CITY OF VICKSBURG. *Power to tax privileges. Limitation.*
   Art. 2, § 27, of the charter of Vicksburg, granted by the legislature April 7, 1876, authorizing the board of mayor and aldermen to levy and collect privilege taxes, is not inconsistent with § 1, act of March 1, 1875 (Acts 1875, p. 8), imposing a limitation on the power of incorporated cities and towns to assess such taxes; the city having authority to levy and collect privilege taxes, but only within the limit prescribed by the general law; namely, that the city tax shall not exceed fifty per centum on the State tax.

2. STATUTE. *Repeal by implication. Construction.*
   Where the charter of a city seemingly conflicts with a statute, but can be so construed as to harmonize therewith, the courts will adopt that construction to prevent the repeal of the statute; and will always, in the construction of statutes, lean against a repeal by implication, and sustain both statutes, if possible.

3. TAX ON PRIVILEGES. *Limitation on power of incorporated cities.*
   The first section of the act of 1875 (Acts 1875, p. 8), providing that "the tax on privileges imposed by this section shall not be liable to taxation by any incorporated city or town to an amount exceeding fifty per centum of the State tax herein provided," applies to all cities and towns then incorporated, as well as those thereafter incorporated.

APPEAL from the Chancery Court of Warren County.
Hon. UPTON M. YOUNG, Chancellor.
The charter of the city of Vicksburg, approved April 7, 1876, by the second article of its twenty-eighth section, empowers the board of mayor and aldermen, by ordinance adopted

at any regular or special meeting, "To levy and collect for corporation purposes a privilege tax upon the business, trade or employment of all auctioneers, grocers, merchants, brokers, bankers, cotton factors and cotton sellers, retailers, taverns, hotels, boarding-house keepers, coffee-house keepers, retail liquor dealers, confectioners, peddlers, junk dealers and others of like character, as the board may designate, and to issue license therefor in such mode and for such time, not exceeding one year, as they may determine; and establish regulations governing their conduct, and enforce the same by proper penalties."

" An ordinance to aid in providing a revenue for the city of Vicksburg, for the fiscal year 1877," ordained and approved by the mayor and aldermen on Feb. 6, 1877, provides:—

"SECT. 1. That there be, and is hereby, assessed and levied a license tax upon each and every trade and business engaged in or carried on in said city, for and during the year 1877, as follows, to wit:—

"1. On each wholesale, retail and commission store, . . . where the stock in trade exceeds $10,000, and is less than $15,000, $80.

"SECT. 4. If any person exercise, carry on or follow any profession, trade or business for or upon which a license or tax may be assessed or required to be paid by any ordinance or resolution of the city, without first paying such tax and obtaining a license from the proper officer therefor, such person shall, upon conviction thereof before the mayor, be fined in any sum not exceeding double the amount of the annual license or tax required to be paid by any such profession, trade or business.

"SECT. 5. Every person requiring a license under this or any other ordinance of this city shall have the same exposed in some proper or conspicuous place in the office, counting-room or place of business; and any person failing to do so shall, upon conviction before the mayor, be subject to a fine of not less than $5, or more than $25, for the first offence, and not less than $25, nor more than $100, for each subsequent offence."

William H. Smith, a merchant upon whose business the license tax of $80 had been levied, filed this bill against the city of Vicksburg, to test the validity of the ordinance. The bill was dismissed, and the complainant appealed.

*Pittman & Pittman*, for the appellant.

The city tax on the privilege of conducting the business of a merchant is illegal, because, being over fifty per centum of the State privilege tax, it violates § 1 of the act to regulate the tax on privileges, approved March 1, 1875 (Acts 1875, p. 8). This general law is not repealed by the charter granted to the city April 7, 1876, because it is neither mentioned therein nor inconsistent therewith. The power to tax a thing is not inconsistent with a limit to the taxation. The charter only gives the right to tax. The act of 1875 prescribes the extent. The statutes are not repugnant, and should, if possible, be so construed that both may stand. A repeal by implication is never favored. *McAfee* v. *Southern Railroad*, 36 Miss. 669; *Bank* v. *Chambers*, 8 S. & M. 9; *House* v. *State*, 41 Miss. 737. The cases of *White* v. *Johnson*, 23 Miss. 68, and *Blain* v. *Bailey*, 25 Ind. 165, apply these principles to facts closely analogous to those in the case at bar. If the grant of taxing power was inconsistent with all limitation thereon, the charter would repeal, *pro tanto*, any prior act restricting the amount of the levy. But the two provisions are consistent. The power to tax and the limitation on the amount, so far from being repugnant, are usually embraced in the same statute. These statutes are in effect one act. The charter under which the city claims the right to levy this tax practically grants the power and prescribes the limitation. And the ordinance levying a tax which conflicts with that limitation is void.

*W. B. Pittman*, on the same side, argued the case orally.

*Buck & Clark*, for the appellee.

The power to tax the trades and callings embraced in art. 2 of § 28 of the city charter of 1876 appears from the terms in which it is conferred, and the absence of all limitation on its exercise, to be a general power, restricted by nothing but the requirements of the corporation. This being so, by what rule of construction can the general law of 1875 operate as a limitation? The statutes do not embrace the same subject-matter: one is to provide a revenue for the State, the other to support the corporation. Hence the cases cited by opposing counsel do not apply; and that from Indiana, which relates to statutes of the same general character, is not authority here.

The rule of construction in this class of cases is, that when general terms are employed they must be given their full effect, and if thereby a conflict arises with a prior statute, it is repealed. *Southern Railroad* v. *Jackson*, 38 Miss. 334; *Haywood* v. *Savannah*, 12 Ga. 404. The charter should be construed as not limited by the prior general law. Had the legislature intended to limit the power, it was easy to do so in the charter; and, from the absence of all limitation, the intent not to restrict it must be inferred. The charter is not an amendment of the law of 1875, but its objects are wholly distinct therefrom. The statutes are not *in pari materia*, nor are they to be construed together. But if they were, the repugnancy between their provisions is such that the charter would repeal the general law, so far as the city of Vicksburg is concerned.

*R. S. Buck*, on the same side, made an oral argument.

SIMRALL, C. J., delivered the opinion of the court.

This suit was brought to procure a judicial interpretation of the question whether the second article of the twenty-seventh section of the charter of the city of Vicksburg, granted by the legislature the 7th of April, 1876, is inconsistent with the first section of the act of March 1, 1875, entitled "An Act to regulate the tax on privileges, and to provide a uniform license system." The city construed its charter as conferring the unrestricted right to levy and collect license taxes, and accordingly passed an ordinance fixing the rate of taxation on the business, trades and employments carried on within the corporate limits, from its own views and discretion, and without reference to the first section of the act of 1875. W. H. Smith, the appellant, under the ordinance was assessed on his business as a merchant, dealing on a capital stock of between $10,000 and $15,000, a larger sum than was authorized by the act of 1875, and complains that the tax is excessive and illegal.

The article of the city charter referred to empowers the board of mayor and aldermen to levy and collect, for municipal purposes, a privilege or license tax on the businesses, trades and employments therein enumerated, "and others of like character, as the board may designate," &c. No reference is made to a rate of taxation. The scope of the

article seems to be to impart the right to assess license or privilege taxes.

It is contended by Smith, the appellant, that the general statute of March 1, 1875, imposed a limit on the power of incorporated cities and towns to assess and collect license or privilege taxes, which was not repealed by the city charter. This act, in its first section, contains a schedule of the business, trades and occupations on which, in its own language, "a tax upon privileges is levied," at the several specific rates therein set forth. It is the trade or business on which the burden is laid, and not the capital therein invested or the property owned, though the amount of the stock in trade, or the value of the property operated in the business, is made in many instances the criterion by which the tax is graduated. The theory of the act is to exact a certain sum from persons pursuing trades, employments or professions, as a license to carry on the business. A clause in the last paragraph of the first section is, "The tax on privileges imposed by this section shall not be liable to taxation by any incorporated city or town to an amount exceeding fifty per centum of the State tax herein provided, nor by any county in any amount whatever, provided that no additional tax shall be collected by county, city or town on any insurance, telegraph, express or sleeping-car companies."

It is the duty of the courts, in the construction of statutes, to lean against a repeal by implication. Although two acts are seemingly repugnant, yet they shall, if possible, have such construction that one may not be a repeal of the other by implication, though there be negative words even. Dwarris on Statutes, 674; *Goldson* v. *Buck*, 15 East, 372; *McAfee* v. *Southern Railroad*, 36 Miss. 669, 675. Repeal by implication arises from necessity only, because the two statutes are inconsistent, and the one cannot have effect without displacing the other. If the charter of the city in the particular quoted can be so construed as to harmonize with the act of 1875, there is no necessary inconsistency, and no repeal of the latter by the former. The scope and intent of art. 2 of § 28 of the city charter was to authorize the board of mayor and aldermen to levy and collect privilege taxes. The purpose of the clause of the

first section of the act of 1875, already quoted, was to impose a limitation on the power of incorporated cities and towns to assess such taxes. The State had by general law declared a policy on this subject, that the towns and cities, while they might tax the privilege to pursue the business of merchant, grocer, factor, banker, and the like, within their corporate limits, should not exceed fifty per centum on the State tax. This general law applied to all the cities and towns then incorporated, as well as to such as might thereafter be incorporated. The subsequent incorporation of the city of Vicksburg with a privilege to assess license taxes must be regarded as in subordination to the general law. This construction of the two statutes, doing no violence to the language of either, gives them an harmonious operation, and carries out the legislative plan and intent. The city has authority to assess and collect privilege taxes, but must exercise it within the limits prescribed by the general law. The grant of the power to tax employments for city purposes does not necessarily repeal the prior law which limited the rate.

We reverse the decree of the Chancery Court, and remand the cause, with instructions, on payment by Smith, the appellant, of fifty per centum of the privilege tax assessed to him by the State under the act of 1875, or which might have been assessed to him as a privilege tax, to make perpetual the injunction against the collection of the residue of the tax assessed to him, and attempted to be collected by the city officials.