## Mayor and Board of Aldermen of City of Vicksburg v. Streckfus Steamers.

(Division B. Oct. 2, 1933. Suggestion of Error Overruled, Dec. 11, 1933.)

·[150 So. 215. No. 30690.]

**Vollor & Teller** and **R. M. Kelly,** all of Vicksburg, for appellants.

Brunini & Hirsch, of Vicksburg, for appellee.

Argued orally by **Landman Teller**, for appellants, and by **J. K. Hirsch**, for appellee.

**Anderson, J.**, delivered the opinion of the court.

Appellee brought this action in the county court of Warren county against appellant to recover the sum of four hundred dollars, which appellee had theretofore paid to appellant, under protest, as a privilege license for conducting pleasure boat excursions from Vicksburg, and return, on the Mississippi river. A jury was waived, and the case tried before the county judge, who rendered a judgment in favor of appellee. From that judgment the appellant appealed to the circuit court of Warren county, where the judgment of the county court was affirmed. From that judgment of the circuit court appellant prosecutes this appeal.

Appellee is a corporation organized under the laws of the state of Delaware, with the power to conduct and operate steamboat lines on the navigable waters of the United States. Appellee was using its Steamer Capitol in carrying on pleasure excursions on the Mississippi river from Vicksburg and return. The city of Vicksburg demanded, and appellee paid, under protest, a privilege tax of two hundred dollars for each day or part of a day it ran its excursion boat. The excursion ran two days; therefore appellee paid the sum of four hundred dollars,

and brought this suit to recover it, because illegally demanded and collected.

Appellant does not operate under the general charter in the code chapter (chapter 50 [Code 1930, sec. 2369 et seq.]); it has its own separate charter, granted pursuant to chapter 35, articles 1 to 3, of the Code of 1857, and re-enacted with amendments by the Laws of 1884, chapter 391, pages 422-451, inclusive. By section 2 of its charter appellant was granted perpetual succession under the name and style "Mayor and Aldermen of the city of Vicksburg." In June, 1892, appellant duly passed a resolution upon its minutes electing not to come under the code chapter on municipal corporations. That resolution has never been rescinded. By its charter appellant was granted the power to levy privilege taxes in this language: "To levy and collect for corporation purposes a privilege tax upon every business, trade, calling, employment or occupation which they may designate, and to fix the amount of such tax at their discretion, and to issue licenses therefor for such time, not exceeding one year, as they may determine, and to establish regulations governing their conduct, and enforce the same by proper penalties." The grant of this power appears in the same language in the act of 1884 (section 28, art. 2) as in the charter adopted pursuant to the Code of 1857.

On the 31st day of December, 1930, appellant passed an ordinance creating and levying certain license taxes on specified businesses, trades, callings, and professions carried on in the city for the year 1931 and subsequent years, among which was a tax of two hundred dollars for each day, or part thereof, upon each excursion boat taking passengers to and from the city of Vicksburg. This ordinance was in full force and effect at the time appellee was conducting its excursions. The business of operating excursion boats is not taxed by the state.

Appellee based its action upon the following grounds: (1) That under the law appellant had no right to levy

a privilege tax upon any business, profession, or calling where no such tax had been exacted by the state; (2) that the tax is unreasonable and discriminatory, and the ordinance levying it is therefore void; (3) that the tax is a burden on interstate commerce and therefore violative of the commerce clause of the Federal Constitution.

We will consider these questions in the order stated.

1. Section 2445, Code 1930, is in this language: "All cities or towns are hereby authorized to levy and collect license tax upon, and regulate all callings, trades, professions and occupations conducted, pursued, carried on or operated within the limits of said city or town, the same not to exceed fifty per centum of the state license tax levied upon the same callings, trades and professions; provided, however, that whenever the penalty attaches under the state law for failure to take out the privilege tax before beginning business, or failure to pay within the month due, said cities or towns are hereby authori·ed to collect a penalty equal to the amount of the license in addition thereto."

Section 2623, Code 1930, provides: "All the preceding sections of this chapter shall apply to all municipalities operating under the common statutory charter for municipalities known as chapter 99, Mississippi Code 1906, or that may hereafter elect to come under the provisions of said preceding sections of this chapter. *And all the preceding provisions of this chapter that are applicable, and are not by express provisions otherwise restricted, shall apply also to municipalities operating under private or special charters, or under a commission form of government; provided, however, that none of the preceding sections of this chapter shall repeal any of the provisions of private or special charters.*" (Italics ours.)

In Smith v. Vicksburg, 54 Miss. 615, and Pitts v. Vicksburg, 72 Miss. 181, 16 So. 418, it was held that the statute prohibiting municipalities from levying more than fifty per cent of the privilege tax levied by the state applied to the city of Vicksburg, under its separate charter. It

will be noted that section 2623 expressly provides in its last clause that none of the preceding sections of the chapter on municipalities shall repeal any of the provisions of "private or special charters." General acts do not ordinarily repeal the provisions of charters granted municipal corporations, unless such repeal is in express language or by necessary implication. 1 McQuillin on Municipal Corporations (2 Ed.), pp. 436, 437. Certainly, sections 2445 and 2623 contain no express repeal of the particular provision of appellant's charter involved. On the contrary, as above stated, the last clause of section 2623 expressly preserves from repeal the charter provisions of all municipalities operating under "private or special charters."

We hold, therefore, that appellant had the right under the law to levy a privilege tax on any business, profession, or calling carried on within its limits, whether taxed by the state or not, provided if taxed by the state, appellant would be limited to fifty per cent of the state tax, and if not taxed by the state "to fix the amount of such tax at their discretion." (Quoting from the charter.)

2. Appellee contends that the ordinance imposing the tax is discriminatory and class legislation, and therefore violative of the equality clause of the Fourteenth Amendment of the Federal Constitution. The only allegation in appellee's pleading touching this question is as follows: The ordinance is "class legislation in that it does not tax or license an excursion to or from the city by rail, bus or other means, and unjustly discriminates against boats or vessels, contrary to the laws of the United States." The ordinance puts excursion boats carrying passengers from the city and return into a separate class. It is true it does not apply to railroad and bus lines, or any other public carriers, still the classification is not unreasonable nor unjust; it is not arbitrary and without foundation. There is a radical difference between the business of appellee and that of railroads,

busses, and other public carriers. Appellee was engaged in carrying passengers for pleasure and recreation alone. The court knows, as every one knows, that railroad and bus lines are not engaged exclusively in such business.

The equal protection clause of the Federal Constitution does not deprive the states of the power to resort to classification for the purposes of taxation, unless it appears that such classification is arbitrary and unreasonable. The states have a wide latitude of classification for the purposes of taxation. Farmers Irrigation District v. Nebraska ex rel., 244 U. S. 325, 37 S. Ct. 630, 61 L. Ed. 1168; Lake Shore & M. S. R. Co. v. Clough, 242 U. S. 375, 37 S. Ct. 144, 61 L. Ed. 674; Clark v. Kansas City, 176 U. S. 114, 20 S. Ct. 284, 44 L. Ed. 392; Missouri, K. & T. R. Co. of Texas v. Cade, 233 U. S. 642, 34 S. Ct. 678, 58 L. Ed. 1135.

To sustain his position appellee relies upon Riley, State Auditor, v. Ayer & Lord Tie Co., 147 Miss. 105, 113 So. 214, 215. That case is not in point. The ground of that decision was that the statute involved was confiscatory; it destroyed the business taxed. The court used this language: "To put it in different words, the particular business here in question is destroyed by the prohibitive tax imposed, when like businesses are not destructively taxed."

Whether the tax involved in the present case is so exorbitant as to be prohibitive and destructive of appellee's business is not presented by the pleadings nor by the evidence.

3. Is the tax a burden on interstate commerce? The evidence showed without conflict that appellee's excursion boat was a pleasure boat. Its passengers embarked and disembarked at the wharf in the city of Vicksburg; tickets were sold alone for carriage from Vicksburg and return. Appellee did not undertake to disembark and embark passengers at any point in the state of Louisiana. It is true the boat touched at Delta Point in Louisiana, and it is also true that in making the trips the boat was

at times on the Louisiana side of the thread of the Mississippi river, therefore in Louisiana territory. Captain Streckfus, the captain in charge of the boat, admitted in his testimony, in effect, that he touched at Delta Point for the sole purpose of evading the privilege tax here involved; that his object was to make the trip one of interstate commerce, and therefore not subject to the tax. In his testimony he said he had some of the passengers get off at Delta Point and get back on for the purpose just mentioned. We are of opinion that this case stands just exactly as if the boat had not touched at Delta Point. Interstate commerce could not be made up of such acts; the touching of the boat at Delta Point was a mere subterfuge. The question is whether or not on these trips the fact that the boat was at times in Louisiana waters, as well as Mississippi waters, made the business of the boat that of interstate commerce. We think not.

Beginning with the early case of Gibbons v. Ogden, 9 Wheat. 1, 196, 6 L. Ed. 23, Chief Justice MARSHALL used this language: ''Commerce among the states must, of necessity, be *commerce with the states*. [Italics ours.] . . . The power of congress, then, comprehends navigation within the limits of every state in the Union; so far as that navigation may be, in any manner, connected with 'commerce with foreign nations, or among the several states, or with the Indian Tribes.' ''

In Wilmington Transportation Co. v. California, 236 U. S. 151, 35 S. Ct. 276, 59 L. Ed. 508, the Supreme Court held that the absence of federal regulation of rates for water transportation unconnected with transportation by railroad leaves a state free to prescribe reasonable rates for the transportation of passengers and goods wholly by water between two ports in the same state, even though over a course which traverses the high seas. In People of State of New York ex rel. Cornell Steamboat Co. v. Sohmer, 235 U. S. 549, 35 S. Ct. 162, 50 L. Ed. 355, the court held that transportation between the ports of

a state was not interstate commerce excluded from the taxing power of the state because as to a part of the journey the course was over the territory of another state. See, further, Baltimore & Ohio S. W. R. Co. v. Settle, 260 U. S. 166, 43 S. Ct. 28, 67 L. Ed. 189.

The point is that, notwithstanding the movement of appellee's boat was interstate, there was no commerce involved; there was no interstate business. The term interstate commerce means, as its language imports, not only interstate movement, but interstate business. There was none here involved. The result is the judgment must be reversed, and judgment rendered here for appellant.

Reversed, and judgment here for appellant.