**STRECKFUS STEAMERS, Inc., v. FOX,**
Tax Com'r of West Virginia.
No. 3404.

District Court, S. D. West Virginia.
March 30, 1936.

The court makes the following findings of fact and conclusions of law:

Findings of Fact.

There is no dispute as to the facts as they were stipulated. The stipulation shows that:

The plaintiff, the Streckfus Steamers, Incorporated, is a Delaware corporation owning and operating four steamboats, duly

licensed and enrolled in the office of the United States Customs Service at St. Louis, Mo., which is the home port of said steamboats and is the location of the main office of the plaintiff. The plaintiff is licensed to conduct and operate said steamboats on the navigable streams of the United States, more particularly the Mississippi river and all of its tributaries. The Ohio river is a tributary of the Mississippi river. Plaintiff's boats are not permanently located in any state, but during the winter months they are moored in a winter harbor outside of West Virginia. During the spring, summer, and fall these steamboats move from place to place up and down the Ohio and Mississippi rivers, conducting excursions and carry crews consisting of a number of persons who live upon the boats.

In the Ohio river, where it borders upon the state of West Virginia, these steamboats are engaged in conducting excursions that (a) proceed from a town in West Virginia upon the Ohio river, and return to such town in the state of West Virginia, receiving and discharging its passengers at the one port; (b) proceeding from towns in the state of Ohio on the Ohio river and discharging its passengers at the point of embarkation; (c) proceeding from a town in West Virginia, and docking at a point in the Ohio river at or near a town in the state of Ohio, receiving other persons from said Ohio town, returning to the first point of embarkation and discharging persons received there, and then proceeding to the point of embarkation of the persons from Ohio and discharging persons received there; (d) conducting excursions similar to those set forth under (c), except that the first point of embarkation is on the Ohio side of the river and the last on the West Virginia side.

Tickets are sold for the excursions which entitle the holder to go and remain upon the vessel for such excursions from the point of embarkation to the return to the same point. Occasionally those taken do not complete the excursion, but get off the vessel at some point other than the point of embarkation.

During the excursions so conducted, food and refreshments are sold by the plaintiff; the payment therefor being separate and in addition to the payment for the excursion ticket. Among the things sold are tobacco and nonintoxicating drinks; skill devices are operated; and during the excursions the passengers indulge in games, sports, and dancing.

The defendant is the duly qualified and acting state tax commissioner of the state of West Virginia, having the authority, and charged with the duty, to enforce the taxing statutes of the state of West Virginia. The defendant has his office in the city of Charleston, in the southern district of West Virginia, and is domiciled and is a resident in the southern judicial district of said state.

The Ohio river is included in the boundary of the state of West Virginia to the low-water mark on the shore of the state of Ohio.

The defendant, contending that the taxing statutes of the state of West Virginia apply to the steamboats of the plaintiff while conducting the excursions above described upon the Ohio river, within the boundaries of the state of West Virginia, requires the plaintiff to pay the following taxes: The tobacco license tax, the skill operating devices license tax, and the license required for the sale of soft drinks; the consumers' sales tax, sometimes called retail sales tax, covering the sale of articles of personal property (this tax has not been required by the defendant with respect to the tickets actually sold on the Ohio shore or as to merchandise sold while the boat is outside the territorial limitations of the state of West Virginia); and the privilege or occupation tax, some times known as the gross sales tax, being a tax on the gross receipts of the plaintiff arising from the transaction of business by the plaintiff's boats while on the Ohio river within the territorial limits of the state of West Virginia.

Employees of the plaintiff have been prosecuted by the officers of the state of West Virginia for failure to collect the consumers' sales tax, as sales were made, and all the taxes imposed by the state of West Virginia have been paid by the plaintiff under protest.

The plaintiff has no agent residing in the state of West Virginia, nor has it any office in that state, and has no tangible or intangible property permanently located within the territorial limits of the state of West Virginia.

### Conclusions of Law.

The court concludes that the state of West Virginia may lawfully impose upon and collect from the plaintiff the taxes de-

**314**

scribed in the findings of fact, with the exception of the gross sales tax.

With regard to the gross sales tax, the court concludes that the tax may be imposed upon and collected from the plaintiff for all the business carried on by its steamboats while within the territorial limits of the state of West Virginia, with the exception of the sums derived from the sale of excursion tickets in the towns and cities in the state of Ohio, and that these latter sums should be excluded in computing the tax to be levied by the state of West Virginia.

The injunction prayed for should be denied with respect to all the taxes in question, excepting that part of the gross sales tax derived from the sale of tickets in the Ohio towns and cities. As to the last described tax the injunction will be awarded.

Judgment should be given the plaintiff against the defendant for such sum as may, upon computation, be found to have been collected upon the sums derived from the sale of excursion tickets in the Ohio towns and cities.

Leo J. Sandmann, of Louisville, Ky., and Arthur S. Dayton, of Charleston, W. Va., for plaintiff.

Homer A. Holt, Atty. Gen., and Wm. H. Wooddell, Asst. Atty. Gen. (Stanley E. Dadisman, of Charlestown, W. Va., on the brief), for defendant.

Before NORTHCOTT, Circuit Judge, and McCLINTIC and COLEMAN, District Judges.

NORTHCOTT, Circuit Judge.

This is a suit in equity, brought by the plaintiff, seeking to restrain the collection of certain taxes imposed by the state of West Virginia. A District Court of three judges, organized in accordance with section 266 of the Judicial Code, as amended (28 U.S.C. § 380 [28 U.S.C.A. § 380]), heard the case on complainant's application for interlocutory and permanent relief. Originally the suit was brought in admiralty, but thereafter was brought again in equity by agreement of the parties. The suit appears clearly to be properly cognizable in equity and not in admiralty. The nature and subject of the controversy, not the location, is the test of admiralty jurisdiction. 1 R.C.L. 413. The test is the nature of a claim upon which the suit is founded. 1 C.J. 1251.

The plaintiff's steamboats are engaged in the excursion business on the Ohio river, conducting excursions from various localities in the state situate on that river. It is admitted that the boundary of the state of West Virginia extends to the low-water mark in the Ohio river, on the shores of the state of Ohio, and the state of West Virginia imposes taxes upon the activities engaged in on the excursion boats while excursions are conducted within the northern and southern boundaries of the state of West Virginia. In the taxes collected is included the refreshment tax set out in the findings of fact. Three contentions are made on behalf of the plaintiff:

(1) That the steamboats operated by the plaintiff, in the course of conducting the excursions, actually cross the boundary of the state of Ohio and enter that state, making the excursions conducted interstate commerce and exempting all the business of the boats from taxation by the state of West Virginia.

(2) That the levying of the taxes in question is beyond the power of the state of West Virginia because of the Northwest Territory Ordinance and certain declarations of the state of Virginia and the state of West Virginia.

(3) That the levying of the taxes in question is beyond the power of the state of West Virginia by reason of the exclusive jurisdiction of the United States over the Ohio river as a navigable stream.

The questions here involved must be considered in the light of the admitted power of a sovereign state to tax within its territorial limits, unless such power is restrained by a paramount law. This sovereign power to tax is general and extensive. The principle is stated in Cooley on Taxation (4th Ed.) § 117, p. 262: "A state has the inherent power to tax all persons, property and business, provided they are within its territorial limits, for public purposes, without regard to whether already taxed in another state, except property of the United States and federal agencies, subject to limitations imposed by the Federal and State Constitutions."

In the same text (section 69, p. 173) the same principle is otherwise stated: "Unless restrained by provisions of the Federal Constitution, the power of the state as to the mode, form and extent of taxation is unlimited, where the subjects to which it applies are within her jurisdiction." See, also, Ruling Case Law, title, States, vol. 25, § 9, p. 376; Ruling Case Law, title,

Taxation, vol. 26, § 63, p. 86; Henderson Bridge Co. v. City of Henderson, 173 U.S. 592, 19 S.Ct. 553, 43 L.Ed. 823.

■ It is well established that included in the limitations upon the power of the sovereign state to tax is the denial of the right to tax interstate commerce. As was said by the Supreme Court in Cooney et al. v. Mountain States Telephone & Telegraph Co., 294 U.S. 384, 55 S.Ct. 477, 481, 79 L. Ed. 934: "But a state cannot tax interstate commerce; it cannot lay a tax upon the business which constitutes such commerce or the privilege of engaging in it. And the fact that a portion of a business is intrastate and therefore taxable does not justify a tax either upon the interstate business or upon the whole business without discrimination."

■ In considering the first contention made on behalf of the plaintiff, we are of the opinion that the record does not show that the steamboats operated by the plaintiff, in the course of conducting the excursions, actually cross the boundary line of the state of West Virginia or that they at any time enter the state of Ohio. This court can take judicial cognizance of things of general knowledge and public interest which it should know, such as the fact that the Ohio river is navigable, but the court cannot take judicial cognizance of facts that are not matters of general knowledge but which should be proven. United States v. Rio Grande Dam & Irrigation Co., 174 U.S. 690, 19 S.Ct. 770, 43 L.Ed. 1136. While it is true that the boundary line of the state of West Virginia may not be changed or extended by improvements made by the government in the erection of locks and dams that raise the general level of the water in the Ohio river, yet it is not at all certain that in landing at an Ohio town or city the plaintiff's steamboats conducting the excursions are ever in the state of Ohio. The record shows that these steamboats are of a large size; we know that a steamboat of that size usually lands at a wharf boat anchored out in the river and attached to the shore. How can it be said, in the absence of specific proof, that these excursion boats, while lying along side of wharf boats of unknown dimension, are above low-water mark on the Ohio side of the river? All these facts are susceptible of proof, and here there is no proof. The burden is upon the plaintiff, and it has

not been sustained. If the steamboats in question, in conducting the excursions described, are engaged in interstate commerce because they at some time pass beyond the boundaries of West Virginia, a question of grave doubt, it is not shown. As was said by Mr. Justice Brandeis in Sprout v. City of South Bend, 277 U.S. 163, 48 S.Ct. 502, 503, 72 L.Ed. 833, 62 A.L.R. 45: "The actual facts govern. For this purpose, the destination intended by the passenger when he begins his journey and known to the carrier, determines the character of the commerce."

In Mayor, etc., of City of Vicksburg v. Streckfus Steamers, 167 Miss. 856, 150 So. 215, it was held by the Supreme Court of Mississippi that excursions of the character here involved did not make the business of the boats interstate commerce.

A decision of the District Court of the United States for the Western District of Kentucky,[1] is cited, holding that the boats of this plaintiff, in conducting excursions beginning and ending at the port of Louisville, were engaged in interstate commerce, and the city of Louisville could not levy a license tax for this privilege. In view of our conclusion that it is not proven here that the boats cross the boundary line of the state of West Virginia, it is not necessary to decide this question.

■ We are of the opinion that the levying of the tax in question is not beyond the power of the state of West Virginia because of the inhibition contained in the Northwest Territory Ordinance and the declarations of the state of Virginia and the state of West Virginia. The Northwest Ordinance and the acts of the two states, as well as the Constitution of the United States, all establish the fact that the waters of the Ohio river should be forever free, "without any tax, impost, or duty therefor." The taxes here sought to be levied by the state of West Virginia are in no sense a tax upon navigation nor tax, impost, or duty for navigation; they are business, license, and sales taxes imposed upon transactions conducted within the limits of the boundaries of the state of West Virginia, and we know of no reason why they cannot be imposed, whether the business taxed be conducted upon the land or upon a steamboat on a navigable stream within the boundaries of the state. Certainly there is nothing in the North-

---

[1] Streckfus Steamers, Inc., et al. v. City of Louisville, decided June 16, 1930, not reported.

316

west Ordinance, the declarations of either the state of Virginia or West Virginia, or the Constitution and laws of the United States that prohibits the levying of these taxes when they do not in any way affect the right of navigation or subject the exercise of the right to a condition. As was said by Mr. Justice Wayne in his concurring opinion in the Passenger Cases, 7 How. 283, 414, 12 L.Ed. 702: "That the power in Congress to regulate commerce with foreign nations and among the several States includes navigation upon the high seas, and in the bays, harbors, lakes, and navigable waters within the United States, and that any tax by a State in any way affecting the right of navigation, or subjecting the exercise of the right to a condition, is contrary to the aforesaid grant."

A tax upon the sale of beer upon a steamboat on a river is not a tax upon the right to navigate the river, and the various activities carried on by the boats while conducting the excursions are taxed incident to the entertainment and pleasure of the excursionists and not to the navigation of the boats. The waters of the Ohio river are none the less "free" because a business conducted on a steamboat, while navigating the river, is taxed.

The Passenger Cases are relied upon on behalf of the plaintiff, but we do not think they are controlling of the question here.

We are of the opinion that the levy of the taxes in question, when confined to activities conducted within the boundaries of the state of West Virginia, is not beyond the power of the state of West Virginia by reason of the exclusive jurisdiction of the United States over the Ohio river as a navigable stream. That the jurisdiction of the United States over a navigable stream is exclusive as far as it extends is well settled, but that the exclusive jurisdiction of the national government is limited is equally as well settled. In some respect the jurisdiction of the national and state governments over navigable rivers within the boundaries of the state are concurrent, but this does not mean that the jurisdiction of the national government in any way destroys the title of the sovereign state. In Union Sand & Gravel Co. v. Northcott et al., 102 W.Va. 519, 135 S.E. 589, the Supreme Court of West Virginia clearly sustains the right of the state of West Virginia to grant title to an island and sand bar in the river, and in the case of Nicoulin v. O'Brien, 172 Ky. 473, 189 S. W. 724, affirmed by the Supreme Court of the United States in Nicoulin v. O'Brien, 248 U.S. 113, 39 S.Ct. 23, 63 L.Ed. 155, the right of the State of Kentucky to protect its fish in the Ohio river to the low-water mark on the Indiana side was upheld. See, also, Memphis & C. Packet Co. v. Pikey, 142 Ind. 304, 40 N.E. 527; J. S. Keator Lumber Co. v. St. Croix Boom Corporation, 72 Wis. 62, 38 N.W. 529, 7 Am. St.Rep. 837.

In the case of Henderson Bridge Co. v. City of Henderson, supra, the right of the state of Kentucky, exercised through a municipal corporation, to tax an interstate bridge to the boundary line of the state of Kentucky (low-water mark on the Indiana side), was upheld. The power of Congress to regulate the use of navigable streams is limited and in no way conflicts with the power, properly exercised, of the states to tax business activities. The jurisdiction of the federal government over navigable streams is for the purposes of navigation. The title of the state may be said to be subject to a servitude in respect of navigation created in favor of the federal government by the Constitution. Gibson v. United States, 166 U.S. 269, 17 S.Ct. 578, 41 L.Ed. 996. The cases relied upon on behalf of the plaintiff all deal with questions connected directly with navigation and are not controlling here.

It is admitted on behalf of the plaintiff that the state of West Virginia has jurisdiction over crimes committed upon the Ohio river and that West Virginia has the power to prohibit certain businesses from being conducted on the river, as, for instance, the sale of alcoholic beverages if such sale is prohibited in the entire state. Certainly, if the state has the power to prohibit the carrying on of a business on the river, it has the power to license or tax the carrying on of the business. The state could not, of course, make it a crime to navigate the river, because of superior jurisdiction over navigation and all questions connected therewith, but this superior jurisdiction, as we have said above, is limited and does not in any way extend to questions not connected with navigation and interstate commerce. It can readily be seen what a chaotic condition would result did the state not have the power to control business activities upon the river, activities in no way connected with navigation. Boats or barges, or any craft coming under

the definition of vessels, could be moored in the river along the boundaries of the state of West Virginia, a distance of several hundred miles, and adjacent to many of the more populous cities of the state, and upon them could be conducted all kinds of businesses, either prohibited or required to be licensed by the state, with impunity, and the state would be powerless. It cannot be that the law is such that conditions like this would result.

■ It is contended on behalf of the plaintiff that some of the taxes involved are taxes upon the citizens of another state, as, for instance, when citizens of Ohio are taken on excursions, the state of West Virginia has not the right to so tax citizens of other states, and that it would be impossible to separate taxes collected from the citizens of Ohio from those collected from citizens of West Virginia. We cannot agree with this contention. The tax is levied, not upon the citizen of another state, but upon sales within the state of West Virginia. A citizen of Ohio, traveling into the state of West Virginia and stopping at a store, is required to pay the consumers' sales tax, not because he is a citizen of Ohio, but because he is making a purchase in the state of West Virginia, a purchase legally taxable under the laws of that state. A hunting or fishing license, required of a nonresident of a state, to hunt or fish within the state, is required, not because the licensee is a nonresident, but because the hunting or fishing is done within the state requiring the license.

■ The defendant admits that it does not require the plaintiff to collect the consumers' sales tax on tickets sold within the state of Ohio, because such sales are clearly made outside the boundaries of the state of West Virginia, yet the defendant does require sums of money realized from such sales to be included in the business or gross sales tax returns of the plaintiff. We can see no reason for such discrimination. The plaintiff should not be required to pay a gross sales tax upon these sums. Without deciding, because proof is lacking, that on any excursions, even though passengers were received from the Ohio side, any of plaintiff's boats were actually ever beyond the territorial limits of West Virginia, and therefore without deciding whether any excursions actually constituted interstate commerce, the West Virginia gross sales tax is not collectible on tickets sold in the state of Ohio because the language of the West Virginia Gross Sales Tax Act, under which the tax has been assessed, clearly negatives any intention to include such sales. The language is as follows (West Virginia Revenue Law, chapter 33, 1st Ex.Sess. 1933, § 2 (g): "Upon every person engaging or continuing within this state in the business of operating a theater, opera house, moving picture show, vaudeville, amusement park, dance hall, skating rink, race track, radio broadcasting station or any other place at which amusements are offered to the public, the tax shall be equal to one and one-half per cent of the gross income of the business."

· It is to be noted that the business covered by the statute is business "within this state" (West Virginia), and that the tax is on "the gross income of the business," which, fairly interpreted, means only the business just referred to. The text is the same in the 1935 act (chapter 86, § 2 (g).

For reasons above given, the injunction will be denied as to the collection of all taxes by the state of West Virginia, with the exception of that portion of the gross sales tax levied upon sums derived from the sale of tickets in Ohio. As to the collection of this portion of the gross sales tax, unless the defendant· agrees to waive collection of same and refund the amounts collected and paid under protest, the injunction will be awarded and judgment will be given plaintiff for such sums when the amount thereof is ascertained. The costs of this suit will be assessed against the defendant.