## Shannon, State Auditor of Public Accounts, et al. v. Streckfus Steamers, Inc.

June 13, 1939.

Wm. B. Ardery, Judge.

Hubert Meredith, Attorney General, and M. B. Holifield and Jesse K. Lewis, Assistant Attorneys General, for appellants.

Leo J. Sandmann for appellee.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—Reversing.

The appellee, Streckfus Steamers, Incorporated, is a Delaware corporation with its principal office in St. Louis, Missouri. It operates a number of excursion steamboats on the Mississippi and Ohio rivers. During the summer of 1936, it operated five boats carrying excursions from various towns in Kentucky on the Mississippi and Ohio rivers and returning to the point of origin. By Section 4281f-2 (erroneously printed as Section 4181f-2) of the Kentucky Statutes, a graduated excise tax is imposed "on the sale of admission to places of amusement and/or entertainment," if the charge exceeds 10 cents. Section 4281f-1, which is a part of the same act, provides:

> " 'Places of amusement and/or entertainment' shall mean and include all theatres, ball parks and stadia, lecture halls, dance halls, night clubs, skating rinks, public bathing places, and all places of other sorts, whether like the above mentioned or not, at which businesses providing amusement and/or entertainments for which a charge is made, are operated, but shall not mean nor include race tracks subject to the supervision of the Kentucky Racing Commission."

Pursuant to this act, appellee paid, under protest, the sum of $1,058.10 in taxes between the date the act became effective and October 16, 1936, since which time the taxes imposed by this statute have not been paid on these operations.

In August, 1938, this suit was filed against the Auditor of Public Accounts by appellee to recover the taxes paid. It is alleged in the petition that the boats were licensed by and operated under permits and certificates of the United States with St. Louis as their home port, and that they were engaged "particularly in the coasting trade of the United States." The plaintiff claimed exemption from all license taxes and alleged that this tax is unenforceable against these operations or on the receipts from the sale of excursion tickets because it interferes with commerce and traffic on navigable streams, the regulation of which is confided exclusively in Congress.

The Auditor by his answer undertook to sustain the right of the Commonwealth to collect the tax in question. He traversed the allegations as to interference with commerce or navigation or with the authority of Congress in the relation stated and the exemption of the operations of the excursions from the tax imposed. He asserted that separate and apart from its business as a common carrier the appellee operated its steamers as floating dance halls and for other purpose of entertainment, recreation and amusement, and that the fee charged each patron was not compensation for transportation between fixed termini, prescribed by the Interstate Commerce Commission, or the Railroad Commission of Kentucky, but for entertainment. As a part of the answer there was filed a newspaper advertisement of one of these operations as a "Moonlight Excursion" featuring a named orchestra. It was further pleaded that the operations of the boats were wholly and exclusively within Kentucky. It was alleged these operations came within the "places of amusement and/or entertainment" as defined in Section 4281f-1 of the Kentucky Statutes.

A demurrer was sustained to the answer and, the Auditor having declined to plead further, judgment was entered in accordance with the prayer of the petition. This appeal followed.

It may be noted in passing that the petition prayed a personal judgment against the Auditor for the amount of the tax claimed instead of seeking a mandamus to require him to draw his warrant for the amount due. The judgment entered conformed to the prayer of the petition but appellant makes no point of this in his brief.

Whether or not the use of the boats on the occasions

involved is to be deemed as operating only "floating dance halls" or as mere pleasure rides, as respectively argued, it is clearly embraced within the terms of the statute as "places of amusement and/or entertainment." The question is whether there is immunity by virture of being interstate commerce or coastwise navigation under the exclusive dominion of the United States.

The sovereign power and jurisdiction of this commonwealth extends to and over the waters of the Ohio river to the low water mark on the northern side, except so far as Kentucky may have ceded or surrendered jurisdiction to the United States for national purposes. Sections 186m and 199, Kentucky Statutes; McFall v. Commonwealth, 59 Ky. 394, 2 Metc. 394; Handly's Lessee v. Anthony, 5 Wheat. 374, 375, 5 L. Ed. 113; Indiana v. Kentucky, 136 U. S. 479, 10 S. Ct. 1051, 34 L. Ed. 329. By the treaty between France, Spain and England in 1763, the middle of the Misissippi river was the boundary between the British and French territories and became the boundary between Missouri and Kentucky when the former state was admitted into the Union in 1820. State of Missouri v. State of Kentucky, 11 Wall. 395, 20 L. Ed. 116.

The place of operations of these boats and the service rendered were within the territorial limits of Kentucky and under the protection of her laws and amenable thereto, subject always to the paramount powers of the United States to regulate commerce as embraced in the Constitution of the United States, U. S. C. A., Article 1, Section 8. But it must not be forgotten that the jurisdiction of the national government over a navigable stream is exclusive only so far as that jurisdiction or power extends and that it is not without some limitation—clear examples being the cognizance by the states of criminal offenses or torts on the stream. As "subjects over which the sovereign power of a state extends are objects of taxation" (McCulloch v. Maryland, 4 Wheat. 316, 429, 4 L. Ed. 579), the tax sought to be recovered was legally collected unless restrained by provisions of the federal constitution as being a burden upon interstate or coastwise commerce, for the lack of state power so to do is undisputed.

We do not conceive the character of the operations or service taxed to be interstate. There was no transportation from one point in Kentucky to a point out of

the state, or vice versa, or any disclosure that in the course of the trips the boats actually crossed a boundary line. City of Vicksburg v. Streckfus Steamers, Inc., 167 Miss. 856, 150 So. 215; Streckfus Steamers v. Fox, D. C., 14 F. Supp. 312; Williamette Iron Bridge Company v. Hatch, 125 U. S. 1, 7, 8 S. Ct. 811, 31 L. Ed. 629, 631. Nor does the fact that the appellee is a foreign corporation, having its boats registered at St. Louis, seem to have any bearing on the question. The power of a state to tax tangible property, or the exercise of a franchise of a corporation or person, may rest on the situs within the state. Commonwealth v. Lee Line Company, 159 Ky. 476, 167 S. W. 409. It is the character of service, and not the character of the carrier, that determines whether transportation is interstate or domestic. People ex rel. Pennsylvania R. Co. v. Knight, 171 N. Y. 354, 360, 64 N. E. 152; affirmed, 192 U. S. 21, 24 S. Ct. 202, 48 L. Ed. 325.

Though the appellee contends otherwise, we think the place of registration of the boats is immaterial for that fact cannot exempt them from the ordinary rules respecting taxation of personal property of its use wholly within the state. It was so held in Old Dominion Steamship Company v. Virginia, 198 U. S. 299, 25 S. Ct. 686, 689, 49 L. Ed. 1059, 3 Ann. Cas. 1100, the opinion concluding:

> "Our conclusion is that where vessels, though engaged in interstate commerce, are employed in such commerce wholly within the limits of a state, they are subject to taxation in that state, although they may have been registered or enrolled at a port outside its limits."

We consider now the plea of immunity because the boats were operated in coastwise traffic. The power of Congress to regulate commerce includes the navigation of public waters in coasting trade without interference by state laws. Gibbons v. Ogden, 9 Wheat. 419, 6 L. Ed. 678. Coasting trade embraces commercial intercourse between places in the same district or state on a navigable river. Ravesies v. United States, C. C., 37 F. 447; North River Steamboat Company v. Livingston, 3 Cow. 713, 747; Title 46, Chap. 12, Section 251, United States Code, 46 U. S. C. A., Section 251. That the object may be to serve the pleasure of passengers and the journey from and to the same port would seem to make no difference in the classification. London Guarantee & Ac-

cident Company v. Industrial Accident Commission, 279 U. S. 109, 49 S. Ct. 296, 73 L. Ed. 632. It has been said that the enrollment of a vessel ascertains her ownership and gives her national character while the licensing of a boat gives her the authority to carry on coasting trade, and together they entitle the owner to raise questions under the laws of the United States, and particularly the commerce clause of the Constitution. Conway v. Taylor, 66 U. S. 603, 17 L. Ed. 191.

The City of Vicksburg, Mississippi, collected from the appellee herein a daily privilege license tax upon each pleasure excursion boat on the Mississippi river taking passengers from the city and returning them thereto. There were two suits to recover money paid under the ordinances, which were in all respects like the case at bar. In the first case, City of Vicksburg v. Streckfus Steamers, Inc., 167 Miss. 856, 150 So. 215, 218, the court regarded the touching of the boat at a point on the Louisiana shore as a subterfuge to give the trip an interstate character, and held that the question was whether or not the excursion trips should be deemed interstate because of the fact that the boats were at times on the Louisiana side of the thread of the river. It was held:

"The term interstate commerce means, as its language imports, not only interstate movement, but interstate business. There was none here involved."

The court, therefore, held that there could be no recovery of the tax paid and, in effect, that the imposition of the license was valid. The second case brought up an identical ordinance for a subsequent year. The Streckfus Steamers pleaded, among other claims of immunity, that it was authorized and empowered to operate its vessels in the coasting trade of the United States as passenger excursion boats, that it was carrying on business on a free navigable stream, and that the ordinances were, therefore, void as to it. But it offered no evidence upon the pleas and on the appeal it was held not entitled to raise any question of interference with the power of Congress over navigation and that the question could not be determined. Streckfus Steamers v. Kiersky, 174 Miss. 125, 163 So. 830. The same ordinances were attacked in a direct proceeding in the United State Court. The District Court and the Circuit Court of Appeals decided the case adversely to

Streckfus Steamers upon procedural grounds. Streckfus Steamers v. Mayor & Board of Aldermen of City of Vicksburg, D. C., 10 F. Supp. 529; Id., 5 Cir., 81 F. (2d) 298.

The taxing authorities of the State of West Virginia undertook to collect from the appellee company licenses on refreshments and gaming devices operated on its boats, and a retail sales tax covering the sale of articles thereon, as well as a privilege or occupation tax, known as a "gross sales tax" on the receipts of the company arising from excursions on the Ohio river within the territorial limits of the State of West Virginia, in all respects like those involved here. It included the sale of excursion tickets. The boundary of West Virginia, like that of Kentucky, extends to the low water mark of the Ohio river on the opposite shore. Streckfus Steamers brought a suit in equity in a United States court to restrain the collection of those taxes. A District Court of three judges, one of whom was a member of a Circuit Court of Appeals, who wrote the opinion, held that the plaintiff was liable for the payment of these taxes, excluding only the tax imposed upon the sale of excursion tickets in the towns and cities of Ohio. Streckfus Steamers v. Fox, D. C., 14 F. Supp. 312, 315. Said the court:

"The taxes here sought to be levied by the state of West Virginia are in no sense a tax upon navigation nor tax, impost, or duty for navigation; they are business, license, and sales taxes imposed upon transactions conducted within the limits of the boundaries of the state of West Virginia, and we know of no reason why they cannot be imposed, whether the business taxed be conducted upon the land or upon a steamboat on a navigable stream within the boundaries of the state. Certainly there is nothing in the Northwest Ordinance, the declarations of either the state of Virginia or West Virginia, or the Constitution and laws of the United States that prohibits the levying of these taxes when they do not in any way affect the right of navigation or subject the exercise of the right to a condition. * * *

"A tax upon the sale of beer upon a steamboat on a river is not a tax upon the right to navigate the river, and the various activities carried on by the boats while conducting the excursions are taxed

incident to the entertainment and pleasure of the excursionists and not to the navigation of·the boats. The waters of the Ohio river are none the less 'free' because a business conducted on a steamboat, while navigating the river, is taxed.''

The appellee relies with confidence upon some of the opinions of this court.

We have held that the state has no power to impose a franchise tax upon a foreign corporation engaged in interstate commerce along the Ohio and Mississippi rivers where it owned no property within the state and its boats landed and received passengers and freight at Kentucky ports. Commonwealth v. Lee Line Company, supra. The case is distinguishable from this in that it was clearly an interstate business upon which it was sought to impose a franchise tax, which is a property tax and it was in effect an effort to impose a tax both on the engaging in interstate commerce and on the right to navigate public waters lying between this and other states.

In River Excursion Company v. City of Louisville, 244 Ky. 811, 51 S. W. (2d) 470, and in City of Louisville v. River Excursion Company, 253 Ky. 95, 68 S. W. (2d) 792, we held the appellee in this case, and other river transportation companies who were parties to those cases, could recover money paid under an ordinance undertaking to impose a license tax for each boat carrying passengers on excursions from and to the wharf in the city, where such ordinance had been held invalid by the United States District Court for the Western District of Kentucky. It is made clear in the opinion that those excursions were interstate and the tax a specific license of each boat as an instrumentality of transportation. Moreover, the correctness of the District Court's conclusion of illegality was not questioned. Of like character were the facts in Harmon v. Chicago, 147 U. S. 396, 13 S. Ct. 306, 37 L. Ed. 216. Such is not this case. We have here a case where the boats were for the time being engaged in affording amusement—according to the concession of the demurrer, operating as dance halls— within the state, and the imposition of an excise tax— not a license or property tax—upon the fares or admission charges.

The term ''excise tax'' is often used as synonymous with privilege or a license tax; but when it is imposed

upon the sale of commodities or tickets to places of amusement it may be regarded in another category. However, "there is no clear line of demarcation between the so-called 'license,' 'occupation' and 'privilege' taxes." Section 45, Cooley, Taxation. It cannot be classed as a direct tax. Alexander Theatre Ticket Office v. United States, 2 Cir., 23 F. (2d) 44; East Ohio Gas Company v. Tax Commission of Ohio, D. C., 43 F. (2d) 170, 172. In City of Louisville v. Churchill Downs, Inc., 267 Ky. 339, 102 S. W. (2d) 10, 13, where it was contended that the imposition of an excise tax on gross receipts derived from the operation of a race track as a place of amusement or entertainment was the duplication of a daily license tax for the privilege of engaging in that business, we pointed out that it was an additional tax, saying:

"The first is a license to do business. The second is purely an excise. While the distinction sometimes is not recognized and inexact expressions regard the two as synonymous, an excise tax is in its proper sense 'something cut off from the price paid on a sale of goods as a contribution to the support of the government.'"

This distinction was recognized where the state of Florida imposed a tax on the gross receipts from intrastate business in addition to license and ad valorem taxes as a condition precedent to a right to do such business. The Pullman Company questioned the right to impose this tax upon it, but it was held that the statute violated no provision of the United States Constitution. Pullman Company v. Knott, Comptroller, 235 U. S. 23, 35 S. Ct. 2, 59 L. Ed. 105.

We think it safely may be said that unless it is clearly shown that there is some particular, direct and substantial—not merely incidental or fortuitous—interference with a federal right, a state is free to exercise its taxing power. Section 374, Cooley, Taxation. We are of the opinion that the excise tax under consideration did not burden the coastwise traffic in which these excursion boats were engaged. As held in Streckfus Steamers v. Fox, supra, the tax is not upon navigation but a sales tax upon the business of affording entertainment conducted within the state and enjoying the protection of state laws. It is an excise tax for revenue only. Hence, that the imposition and collection of the tax were authorized.

The judgment is accordingly reversed for consistent proceedings.

Whole Court sitting.

Judges Rees and Stites, dissenting.